Opinion
VOROS, Judge:
[ 1 Sharon Jones (Mother) appeals the trial court's order awarding visitation with Mother's daughter (Child) to Child's paternal grandparents, Ellie and Tracy Jones (Grandparents). Mother claims a fundamental constitutional right in the control of Child and contends that Utah's Grandparent Visitation Statute is not narrowly tailored to serve a compelling state interest as applied to her under the cireumstances of this case. We agree and reverse.
BACKGROUND
12 Mother married Tracy Jones Jr. (Father) in 2006. Child was born in November 2007, and Mother and Father separated in January 2009. Mother and Father shared equal custody of Child following their separation. Between January and March 2009, Father lived with Grandparents, who helped care for Child while she was in Father's custody. After Father moved out of Grandparents' home, Ellie Jones continued to visit him two to three times a week. Father died in May 2009, when Child was approximately eighteen months old. Mother continued to facilitate contact between Child and Grandparents during the months immediately following Father's death. On July 24, 2009, Grandparents took Child to a baseball game and brought her home after 10:80 p.m. Although Grandparents believed that Mother had agreed for them to bring Child home late, Mother later expressed concern about the late hour.
T3 Following the baseball game, Mother denied several of Grandparents' requests to spend time with Child and also requested that Grandparents not call Child on weeknights. Grandparents then wrote Mother an *601 email requesting visits with Child two full weekends per month, visits on holidays and birthdays, an extended visit each summer, and two phone calls per week. When Mother did not respond, Grandparents threatened to sue for grandparent visitation. Mother then responded with an email outlining concerns she had about permitting Child to continue visiting Grandparents and informing them that she intended to limit their contact with Child to one phone call per month and one visit every other month for a few hours in the presence of Mother or one of Mother's family members. Grandparents responded that they would not submit to being supervised and that they intended to initiate court proceedings.
14 On September 24, 2009, Grandparents filed a Verified Petition to Establish Grandparent Visitation Rights pursuant to the Grandparent Visitation Statute, see Utah Code Ann. § 30-5-2 (LexisNexis 2007), requesting visitation comparable to that afforded to noneustodial parents under a separate statutory provision, see id. § 80-8-35.5(e) (Supp.2012).[1] Their petition alleged the exis tence of factors tending to rebut the statutory presumption "that a parent's decision with regard to grandparent visitation is in the grandchild's best interests" (the parental presumption). See id. § 30-5-2(2) (2007); see also Troxel v. Granville, 530 U.S. 57, 68, 70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion) (holding that due process requires that a fit parent's decision regarding grandparent visitation be given "special weight").
T5 Grandparents did not see Child again until July 2011, when they saw her as part of a Grandparent Time Evaluation. By that time, Child was approximately three and a half years old. At the evaluation, Child "exhibited no distress being with [Grandparents]; recognized them; played board games and sang a song; and called Grandparents 'Nana and Papa.'" The evaluator "concluded that [Grandparents] were appropriate, fit, and proper to have visitation with [Child]. She recommended that Grandparents be awarded phone calls with Child and visitation one day per month, starting with three hours per visit and gradually increasing to overnight visits as Child gets older.
T6 A trial was held on October 12 and 13, 2011, The trial court issued its Findings of Fact and Conclusions of Law on December 21, 2011, in which it considered the statutory factors and concluded that Grandparents had rebutted the parental presumption by clear and convincing evidence. Specifically, it concluded that Grandparents were "fit and proper persons to have visitation with [Child]," that "Ivlisitation with [Child] was denied and unreasonably limited" by Mother, that Grandparents "had a substantial relationship with [Child] until the denial of visitation and the denial has likely caused harm to [Child]," that Father had died, and that "Ivlisitation is in the best interest of [Child]." As a result of its findings, the trial court ordered grandparent visitation amounting to approximately thirty-six hours per month. Mother appeals.
TISSUE AND STANDARD OF REVIEW
T7 The central issue on appeal is Mother's challenge to the constitutionality of the Grandparent Visitation Statute, as applied under the cireumstances of this case. "Constitutional challenges to statutes present questions of law, which we review for correctness." State v. Green, 2004 UT 76, ¶ 42, 99 P.3d 820 (citation and internal quotation marks omitted). Nevertheless, "legislative enactments are presumed to be constitutional, and those who challenge a statute or ordinance as unconstitutional bear the burden of demonstrating its unconstitutionality." Id. (citation and internal quotation marks omitted).
ANALYSIS
As Applied to Mother, the Grandparent Visitation Statute Is Not Narrowly Tailored To Serve a Compelling State Interest.
18 The Grandparent Visitation Statute allows a grandparent to petition the court for grandparent-grandchild visitation over *602 the objection of the grandehild's parents. The statute acknowledges "a rebuttable presumption that a parent's decision with regard to grandparent visitation is in the grandchild's best interests." Utah Code Ann. § 30-5-2(2). However, the statute allows the court to override the parent's decision when the parental presumption has been rebutted. Id. The statute identifies several factors relevant to this analysis:
[The court may override the parent's decision and grant the petitioner reasonable rights of visitation if the court finds that the petitioner has rebutted the presumption based upon factors which the court considers to be relevant, such as whether:
(a) the petitioner is a fit and proper person to have visitation with the grandchild;
(b) visitation with the grandchild has been denied or unreasonably limited;
(c) the parent is unfit or incompetent;
(d) the petitioner has acted as the grandechild's eustodian or caregiver, or otherwise has had a substantial relationship with the grandchild, and the loss or cessation of that relationship is likely to cause harm to the grandchild;
(e) the petitioner's child, who is a parent of the grandchild, has died, or has become a noncustodial parent through divorce or legal separation;
(f) the petitioner's child, who is a parent of the grandchild, has been missing for an extended period of time; or
(g) visitation is in the best interest of the grandchild.
Id. Grandparents seeking court-ordered visitation must overcome the parental presumption by clear and convincing evidence. Uzelac v. Thurgood (In re Estate of S.T.T.), 2006 UT 46, ¶ 28, 144 P.3d 1083.
A. Because a Parent's Right Is Fundamental, Strict Serutiny Applies.
T9 Mother contends on appeal that any intrusion into a parent's constitutional liberty interest must be narrowly tailored to achieve a compelling state interest. She argues that "constitutional law requires a compelling state interest before visitation may be ordered, and no fact findings or trial evidence identify a compelling interest here." We agree.
{10 "[The interest of parents in the care, custody, and control of their children . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion) (citing Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Pierce v. Society of Sisters, 268 U.S. 510, 534-35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 899, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). Parents have a fundamental right "to make decisions concerning the care, custody, and control of their children." Troxel, 580 U.S. at 66, 120 S.Ct. 2054 (citing Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct 2258, 138 L.Ed.2d 772 (1997); Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)).
111 The Utah Constitution similarly protects this fundamental right. "In a long line of precedent, [the Utah Supreme Court] has recognized parental rights as a fundamental component of liberty protected by article I, section 7 [of the Utah Constitution]." Jensen ex rel. Jensen v. CunninghAm, 2011 UT 17, ¶ 72, 250 P.3d 465 (citing Mill v. Brown, 31 Utah 473, 88 P. 609, 618 (1907). Indeed, as our Legislature recently recognized, "[the right of a fit, competent parent to raise the parent's child without undue government interference is a fundamental liberty interest that has long been protected by the laws and Constitution of this state and of the United States, and is a fundamental public policy of this state." Utah Code Ann. § 78A-6-508(9) & amend. notes (LexisNexis 2012). "[AlIthough fundamental, parental rights are not absolute. A parent's rights must be balanced against the state's important interest in protecting chil *603 dren from harm." Jensen, 2011 UT 17, 174, 250 P.3d 465 (citations omitted).
$112 In contrast, "[hlistorically, grandparents had no legal right of visitation." Campbell v. Campbell, 896 P.2d 635, 642 n. 15 (Utah Ct.App.1995) (citing Laurence C. Nolan, Honor Thy Father and Thy Mother: But Court-Ordered Grandparent Visitation in the Intact Family?, 8 BYU J. Pub.L. 51, 57 (1998)). "It is a fundamental tenet of our common law that 'the only persons having any actually vested interest in the custody of a child cognizable by the law are the parents'" Jones v. Barlow, 2007 UT 20, ¶ 39, 154 P.3d 808 (quoting Wilson v. Family Servs. Div., 554 P.2d 227, 229 (Utah 1976) (adjudicating the interest of a grandmother)). "Other relatives of a child merely have 'some dormant or inchoate right or interest in the custody and welfare of children' that matures only upon the death or termination of the rights of the parents." Id. (quoting Wilson, 554 P.2d at 230-831). Accordingly, the legal interests of grandparents are typically protected by a state statute similar to the one before us. Such statutes inevitably raise the question of the extent to which the state may impinge upon the parent's fundamental right to control of her child for the purpose of vindicating a grandparent's "dormant or inchoate right or interest in the custody or welfare of children." Id. (citation and internal quotation marks omitted).
113 The question before us is what level of scrutiny to apply in reviewing a statute that to some degree cireumseribes a parent's fundamental right to decide questions involving the care, custody, and control of her child. Ordinarily, "the [federal] Due Process Clause prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest." Lawrence v. Texas, 539 U.S. 558, 593, 128 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (emphasis omitted). Similarly, our supreme court has stated that under the Due Process Clause of the Utah Constitution, a "statute that infringes upon [a parent's] fundamental right is subject to heightened serutiny and is unconstitutional unless it (1) furthers a compelling state interest and (2) 'the means adopted are narrowly tailored to achieve the basic statutory purpose.'" Jensen, 2011 UT 17, 172, 250 P.3d 465 (quoting Wells v. Children's Aid Soc'y of Utah, 681 P.2d 199, 206 (Utah 1984)).
{14 However, in ruling on the constitutionality of grandparent visitation statutes, neither high court has stated that heightened scrutiny applies. In Troxel v. Granville, the Supreme Court invalidated the application of a grandparent visitation statute on the ground that it unconstitutionally infringed on the parent's fundamental right. 580 U.S. 57, 78, 120 S.Ct. 2054, 147 LEd.2d 49 (2000) (plurality opinion).[2] A plurality of the Court stated that the "breathtakingly broad" statute involved in that case effectively allowed a judge to "disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." Id. at 67, 120 S.Ct. 2054. Justice Thomas concurred in the judgment, advocating the strict serutiny standard and stating that it was not satisfied. See id. at 80, 120 S.Ct. 2054 (Thomas, J., concurring in the judgment). Despite Justice Thomas's chiding, the plurality declared the statute unconstitutional as applied to that case without identifying the applicable level of seruti-ny.
15 In Uzelae v. Thurgood, our supreme court upheld the Grandparent Visitation Statute against a federal constitutional challenge. See Uzelac v. Thurgood (In re Estate of S.T.T.), 2006 UT 46, ¶¶ 1-2, 144 P.3d 1083. The court compared Utah's statute to the statute held unconstitutional in Troxel See id. The court concluded that Utah's statute avoided the errors identified in Troxel and thus was "not unconstitutional under Troxel" either facially or as applied. See id. 1185, 838. The court further addressed the "standard of proof by which the parental presumption must be rebutted," *604 concluding that "a clear and convincing standard of proof should apply to satisfy due process requirements." - Id. 128 (citing Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("We hold that such a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process.")).
1 16 But the clear and convincing standard is a standard of evidentiary proof, not a level of constitutional serutiny. It is one thing to require that "factors which the court considers to be relevant" to grandparent visitation, "such as" those listed in section 30-5-2(2), must be found by clear and convincing evidence. See Utah Code Ann. § 30-5-2@) (LexisNexis 2007); Uzelac, 2006 UT 46, 1 28, 144 P.3d 1088. It is quite another to determine that the existence of some combination of those factors justifies the state's interference with a parent's control of her child-although the court obviously made that determination in Uzelae.
17 Santosky v. Kromer, from which our supreme court drew the clear and convincing standard, is instructive. See 455 U.S. 745, 102 S.Ct. 1888, 71 LEd.2d 599 (1982). At issue in that case was a New York statute permitting the state to terminate the rights of parents in a child upon a finding that the child was "permanently neglected." See id. at 747, 102 S.Ct. 1888. The statute required only that "a fair preponderance of the evidence support that finding. Thus, in New York, the factual certainty required to extinguish the parent-child relationship [was] no greater than that necessary to award money damages in an ordinary civil action." Id. (citation and internal quotation marks omitted). In other words, at issue in Sontosky was not whether the State of New York had a compelling interest in rescuing permanently neglected children-the parties and the Court apparently assumed it did-but what level of proof was required to establish neglect. Santosky did not address the question of the appropriate level of constitutional serutiny.
18 Since Troxel, several state courts have reviewed the constitutionality of their respective grandparent visitation statutes without considering the level of serutiny to apply. See Moriarty v. Bradt, 177 N.J. 84, 827 A.2d 203, 218-19 (2003) (collecting cases). Instead, they have "simply compared the structure of their statutes to the one invalidated in Troxel to assess constitutionality." Id. at 219; see also, e.g., Williams v. Williams, 2002-NMCA-074, ¶¶ 10-29, 132 N.M. 445, 50 P.3d 194. Similarly, our supreme court in Uzelac addressed whether the statute was constitutional "under Troxel." See 2006 UT 46, 85, 144 P.3d 1083. It did not address the level of constitutional scrutiny applicable to the Grandparent Visitation Statute, presumably because under any level of scrutiny, the court would not have held the statute unconstitutional facially or as applied to the facts of that case.
119 Notwithstanding Mother's extensive appellate briefing of the appropriate level of serutiny, Grandparents do not squarely address the argument. They simply respond that Uzelac settled the constitutionality of the Grandparent Visitation Statute, and that even if strict serutiny applied, that standard is met here.
120 However, Uzelac's declaration that the Grandparent Visitation Statute is constitutional on its face does not dispose of Mother's challenge to the statute as applied to her. Furthermore, unlike Troxel and Uze-lac, this case does not fall comfortably on either end of the constitutional spectrum. Thus, to address Mother's constitutional challenge, we must decide the appropriate level of serutiny to apply.
1 21 As Mother notes, the majority of state courts to address the issue have held that grandparent visitation laws are subject to strict scrutiny. See, e.g., Ex parte E.R.G., 73 So.3d 634, 645-46 (Ala.2011) (plurality opinion); id. at 662 (Murdock, J., concurring specially); Linder v. Linder, 348 Ark. 322, 72 S.W.3d 841, 855 (2002); Roth v. Weston, 259 Conn. 202, 789 A.2d 431, 441 (2002); Doe v. Doe, 116 Hawai'i 323, 172 P.3d 1067, 1079 (2007); Lulay v. Lulay, 198 Ill.2d 455, 250 Ill.Dec. 758, 739 N.E.2d 521, 532 (2000); Rideout v. Riendeau, 2000 ME 198, ¶ 19, 761 A.2d 291 (plurality opinion); id. ¶¶ 47, 51 (Alexander, J., dissenting); Koshko v. Haining, 398 Md. 404, 921 A.2d 171, 187-91 *605 (2007); SooHoo v. Johnson, 781 N.W.2d 815, 821 (Minn.2007); Moriarty, 827 A.2d at 222; In re Herbst, 1998 OK 100, ¶ 14, 971 P.2d 395; Hiller v. Fausey, 588 Pa. 342, 904 A.2d 875, 885-86 (2006); Smallwood v. Mann, 205 S.W.3d 358, 362-68 (Tenn.2006), In re Parentage of C.A.M.A., 154 Wash.2d 52, 109 P.3d 405, 408-09, ¶¶ 9-13 (2005) (en banc); see also Von Eiff v. Azicri, 720 So.2d 510, 514 (Fla.1998) (applying state constitution); Santi v. Santi, 633 N.W.2d 312, 318 (Iowa 2001) (same). But see, e.g., Crafton v. Gibson, 752 N.E.2d 78, 90-92 (Ind.Ct.App.2001) (applying rational basis review because the state's grandparent visitation statute did not significantly interfere with parents' fundamental rights); Herndon v. Tuhey, 857 S.W.2d 203, 208-10 (Mo.1993) (en banc) (same).
22 Our supreme court has held that under the Utah Constitution, "the proponent of legislation infringing parental rights must show (1) a compelling state interest in the result to be achieved and (2) that the means adopted are narrowly tailored to achieve the basic statutory purpose." Wells v. Children's Aid Soc'y of Utah, 681 P.2d 199, 206 (Utah 1984) (citation and internal quotation marks omitted). This holding has never been applied in the context of grandparent visitation. It is true that in Campbell #. Campbell, in examining a federal constitutional challenge to the predecessor of our current Grandparent Visitation Statute, we refused to "apply strict serutiny to determine the statute's constitutionality" and instead held "the statute to be constitutional because it is rationally related to furthering a legitimate state interest." 896 P.2d 685, 644 (Utah Ct.App.1995). Campbell held that rational basis review was appropriate because the statute in effect at the time did not "substantially infringe upon the parent's fundamental rights or the autonomy of the nuclear family." Id. at 642.
23 But Campbell's holding on this point was effectively overruled by Troxel. Although Troxel did not address the standard of review, the fundamental nature of the parental right in question and the significant impact a grandparent visitation statute has on a fit parent's rights both appear as strong undercurrents running throughout the Trox-el plurality's decision that the statute "unconstitutionally infringe[d] on that fundamental parental right." See Troxel v. Granville, 530 U.S. 57, 67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion); see also id. at 101, 120 S.Ct. 2054 (Kennedy, J., dissenting) ("[A] domestic relations proceeding in and of itself can constitute state intervention that is so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated.").
124 The Grandparent Visitation Statute qualifies as "legislation infringing parental rights" in a substantial, not merely incidental, way, because it allows the state to override a parent's decision regarding the care, custody, and control of her child. See Wells, 681 P.2d at 206; see also Washington v. Glucksberg, 521 U.S. 702, 767 n. 8, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (Souter, J., concurring in the judgment) (noting that "not every law that incidentally makes it somewhat harder to exercise a fundamental liberty must be justified by a compelling counterinterest," but only those laws that substantially infringe on a fundamental liberty interest); Koshko v. Haining, 398 Md. 404, 921 A.2d 171, 187-91 (2007) (holding that the state's grandparent visitation statute infringed on a fundamental right in a direct and substantial way). Furthermore, as noted above, the application of strict serutiny is consistent with the majority of other jurisdictions to address the issue under the federal constitution. We agree with the reasoning of those cases and thus conclude that strict scrutiny review applies to Mother's claim that the statute, as applied, violated her rights under the Utah and United States Constitutions.
B. The Statute As Applied to the Facts of This Case Does Not Withstand Strict Serutiny.
125 As noted above, a "statute that infringes upon [a parent'sl 'fundamental' right is subject to heightened scrutiny and is unconstitutional unless it (1) furthers a compelling state interest and (2) 'the means adopted are narrowly tailored to achieve the basic statutory purpose."" Jensen ex rel. Jen *606 sen v. Cunningham, 2011 UT 17, ¶ 72, 250 P.3d 465 (quoting Wells, 681 P.2d at 206). The Grandparent Visitation Statute as applied to the facts of this case satisfies neither element of this test.
126 Here, Grandparents have not demonstrated that the state's interest in ordering visitation is compelling. The classic justification for state intervention in the parent-child relationship is to protect "a child who is an abused child, neglected child, or dependent child," see Utah Code Ann. § 78A-6-108(8) (LexisNexis 2012) And where the parent-child bond is to be severed altogether, the parent "is entitled to a showing of unfitness, abandonment, or substantial neglect before her parental rights are terminated." In re J.P., 648 P.2d 1364, 1377 (Utah 1982).
27 In the context of grandparent visitation, many states hold that a compelling state interest is established only where denial of visitation would significantly harm the grandchild. See, eg., Roth v. Weston, 259 Conn. 202, 789 A.2d 481, 445 (2002) ("Without having established substantial, emotional ties to the child, a petitioning party could never prove that serious harm would result to the child should visitation be denied. This is as opposed to the situation in which visitation with a third party would be in the best interests of the child or would be very beneficial. The level of harm that would result from denial of visitation in such a situation is not of the magnitude that constitutionally could justify overruling a fit parent's visitation decision."); Beagle v. Beagle, 678 So.2d 1271, 1276 (Fla.1996) (concluding, under the privacy clause of the Florida Constitution, that the state has a compelling interest in ordering grandparent visitation over the wishes of a fit parent only "when it acts to prevent demonstrable harm to the child"); Brooks v. Parkerson, 265 Ga. 189, 454 S.E.2d 769, 772-74 (1995) (holding that under state and federal constitutional law, "state interference with parental rights to custody and control of children is permissible only where the health or welfare of a child is threatened"); Doe v. Doe, 116 Hawai'i 323, 172 P.3d 1067, 1079-80 (2007) recognition of parental autonomy in child-rearing decisions requires that the party petitioning for visitation demonstrate that the child will suffer significant harm in the absence of visitation before the family court may consider what degree of visitation is in the child's best interests."); In re Marriage of Howard, 661 N.W.2d 183, 191 (Iowa 2003) ("If grandparent visitation is to be compelled by the state, there must be a showing of harm to the child beyond that derived from the loss of the helpful, beneficial influence of grandparents."); Moriarty v. Bradt, 177 N.J. 84, 827 A2d 203, 222 (2003) ("Our prior jurisprudence establishes clearly that the only state interest warranting the invocation of the State's parens patrige jurisdiction to overcome the presumption in favor of a parent's decision and to force grandparent visitation over the wishes of a fit parent is the avoidance of harm to the child .... Although Trowel avoided confronting that issue directly, we are satisfied that prior United States Supreme Court decisions fully support our conclusion that interference with parental autonomy will be tolerated only to avoid harm to the health or welfare of a child."); In re Herbst, 1998 OK 100, ¶ 16, 971 P.2d 395 ("[A] vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child."); Hawk v. Hawk, 855 S.W.2d 573, 577 (Tenn.1993) (holding that, under the state constitution's right to privacy, "when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit"); In re Parentage of C.A.M.A., 154 Wash.2d 52, 109 P.3d 405, 418, ¶ 29 (2005) (en banc) (concluding that "the application of the 'best interests of the child' standard rather than a 'harm to the child' standard is unconstitutional" under the Washington case that was affirmed on narrower grounds by Trox-el); see also Tracy C. Schofield, Comment, All the Better to Eat You With, My Dear: The Need for a Heightened Harm Standard in Utah's Grandparent Visitation Statute, 2006 BYU L.Rev. 1669, 1734 (advocating an amendment to the Utah Grandparent Visita *607 tion Statute to require grandparents to show "that a parent is unfit and that his or her visitation decision will substantially harm the children"). But see, e.g., Rideout v. Riendeau, 2000 ME 198, ¶ 23, 761 A.2d 291 ("An element of 'harm' in the traditional sense is not, however, the only compelling state interest extant when matters relating to the welfare of children are under serutiny."); Hiller v. Fausey, 588 Pa. 342, 904 A.2d 875, 886-90 (2006) (concluding that a harm requirement "would set the bar too high," but that the state has a compelling interest in "protecting the health and emotional welfare of children" and that the state's statute was narrowly tailored because it extended visitation rights only to grandparents whose child had died, afforded special weight to a parent's decision regarding visitation, required the court to consider the strength of the grandparent-grandchild relationship, and required findings that visitation would not interfere with the parent-child relationship and that visitation would serve the best interests of the grandchild).
128 On the other hand, some states appear to interpret Troxel as requiring the conclusion that a showing of harm is unnee-essary. See, e.g., In re Adoption of C.A., 137 P.3d 318, 825-26 (Colo.2006) (en banc). However, this interpretation does not square with Troxel and is inconsistent with our supreme court's reading of Troxel. Rather than ruling that a showing of harm is not required, "the plurality [in Troxel ] specifically refused to determine whether the Due Process Clause requires a showing of harm or potential harm to the child as a condition precedent to granting visitation." Uzelac v. Thurgood (In re Estate of S.T.T.), 2006 UT 46, ¶ 24, 144 P.3d 1083 (citing Troxel v. Granville, 530 U.S. 57, 73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion)). Indeed, other courts have found that a statutory scheme can meet the requirements of Troxel but nonetheless fail a strict scrutiny analysis absent a showing of harm. See, e.g., Doe, 172 P.3d at 1077, 1080.
129 Our Grandparent Visitation Statute does not require a showing of harm to the grandchild. Rather, harm to the grandchild caused by termination of a substantial relationship with the grandparent is listed as one of seven factors the court may "consider[ ] to be relevant" in determining whether the grandparent has rebutted the presumption that "a parent's decision with regard to grandparent visitation is in the grandchild's best interest":
(d) the petitioner has acted as the grandchild's custodian or caregiver, or otherwise has had a substantial relationship with the grandchild, and the loss or cessation of that relationship is likely to cause harm to the grandchild....
Utah Code Ann. § 30-5-2@)(d) (LexisNexis 2007) (emphasis added). Moreover, as our supreme court observed in Uzelac, the statute "does not provide a district court with much guidance regarding how the factors ought to be weighed or applied." 2006 UT 46, 11 86 n. 7, 144 P.8d 1088.
130 Here, Mother contends that although the trial court ruled that denial of visitation "has likely" harmed Child, the court "made no fact findings in support of that conclusion, for the record was barren of any such evidence." Indeed, the grandparent visitation evaluation contains no reference to harm suffered by Child. Although the evaluator did testify that Child might someday benefit from knowing her paternal grandparents in order to grieve her father's death and deal with inevitable questions about her past, this prediction is speculative and in any event merely states the rationale for statutory factor (e), the death of a parent. See Utah Code Ann. § 80-5-2(@2)(e).
1 31 In response, Grandparents assert that they had acted as Child's custodian or caregiver and enjoyed a substantial relationship with Child. And although they assert that "harm has and will result if visitation is denied," they point to no record evidence supporting that assertion. The expert testimony they cite suggests only that harm would likely result in this type of situation. The evaluator stated that she lacked sufficient information to determine whether harm had actually resulted to Child. Furthermore, the record evidence describes a healthy and normal - grandparent-grandehild - relation *608 ship, but not an exceptionally close one.[3] For example, the court found that in the meeting the evaluator hosted between Grandparents and Child, Child "exhibited no distress" and-tellingly-"recognized them."
{ 32 Grandparents maintain that harm may be inferred from the fact that Mother abruptly ended visitation two years before trial, and the trial court's findings to this effect are uncontested. But the only harm identified by Grandparents or by the trial court is loss of the grandparent-grandehild relationship itself-a cireumstance inherent in every case likely to be brought under the statute-and even at that, the testimony of harm to Child is speculative. In sum, the evidence that Grandparents had a substantial relationship with Child and that Child would be harmed by denied visitation was not compelling.
4 83 Other statutory factors are either unchallenged here or supported by clear and convincing evidence: Father died, Grandparents and Mother are fit, Mother unreasonably limited Grandparents' visitation, and visitation is in Child's best interest.[4] Consequently, the only factor distinguishing this case from any other parent-grandparent visitation litigation between fit parties is the fact that Father is deceased. Indeed, the present record does not even demonstrate Child's "understandable sadness resulting from losing a family member and ... missing [her] grandparents" found insufficient in In re Scheller, 8325 S.W.3d 640, 644 (Tex. 2010) (applying a statute that was amended after Troxel to require grandparents to rebut the parental presumption "by proving that denial ... of access to the child would significantly impair the child's physical health or emotional well-being" (citation and internal quotation marks omitted)). No one in this case has claimed that, without more, Father's death justifies compelled visitation under any standard, much less the compelling state interest standard. We therefore conclude that the facts of this case are not "sufficient ... to justify state interference." See Uzelac v. Thurgood (In re Estate of S.T.T.), 2006 UT 46, ¶ 38, 144 P.3d 1083.
134 Even if Grandparents had demonstrated that the state's interest in requiring visitation here was compelling, they have not shown that the visitation ordered in this case was narrowly tailored to achieve that interest. Where a statute infringes on a fundamental right, the means adopted must be "narrowly tailored to achieve the basic statutory purpose." Jensen ex rel. Jensen v. Cunningham, 2011 UT 17, ¶ 72, 250 P.3d 465 (citation and internal quotation marks omitted).
€$35 As of June 2012, Grandparents are entitled under the trial court's order to visitation on alternating weekends, one of which is an overnight visit. This level of visitation is well below the minimum statutory schedule for a parent. See Utah Code Ann. § 80-3-85 (LexisNexis Supp.2012); id. § 80-3-35.5(8)(£). But it is more substantial than the visitation many grandparents enjoy, especially those who, like Grandparents here, live in a different city from their grandchild.
CONCLUSION
T 36 In sum, we conclude that the Grandparent Visitation Statute is unconstitutional under the Utah and United States Constitutions as applied to Mother in this case. We need not reach any other elaims presented in this appeal. The judgment of the trial court is accordingly reversed.

. In the course of the proceedings, Grandparents' request for visitation was dramatically reduced from their initial request.

. For a chart analyzing the six splintered opinions in Troxel, see Tracy C. Schofield, Comment, All the Better to Eat You With, My Dear: The Need for a Heightened Harm Standard in Utah's Grandparent Visitation Statute, 2006 BYU L.Rev. 1669, 1699.

. The strength of the relationship was affected, no doubt, by Mother's restriction of Grandparents' contact with Child prior to the Grandparent Time Evaluation.

. We understand the statutory term "unreasonably limited" to mean that the limitation on visitation seems disproportional to the reasons offered for it. See Utah Code Ann. § 30-5-2(2)(b) (LexisNexis 2007).