REBECCA GRASSL BRADLEY, J. (concurring).
¶44 I agree with the majority that Wisconsin Stat. § 767.43(3) infringes upon parents' fundamental liberty interest in the care, custody, and upbringing of their children and therefore must withstand strict scrutiny in order to be constitutional. Majority op., ¶2. I also agree that the circuit court's visitation order in this case violated the constitutional rights of the parents and I join the mandate vacating the circuit court's order. I write separately because when subjected to a strict scrutiny analysis, *502 § 767.43(3) must fall as facially unconstitutional, not merely unconstitutional as applied to the parents in this case as the *34 majority decides. The State "lacks even a legitimate governmental interest-to say nothing of a compelling one-in second-guessing [ ] fit parent[s'] decision[s] regarding visitation with third parties." Troxel v. Granville, 530 U.S. 57, 80, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000) (Thomas, J., concurring). I would strike down § 767.43(3) because it tramples upon "perhaps the oldest of the fundamental liberty interests recognized by th[e] Court." See Troxel, 530 U.S. at 65, 120 S. Ct. 2054. Because the majority upholds the constitutionality of § 767.43(3), except as applied to the parents in this particular case, fit parents' fundamental liberty interest in raising their children free from governmental interference remains at risk.[1]
I
¶45 The parents in this case challenge the constitutionality of Wis. Stat. § 767.43(3), which provides:
*35 (3) Special grandparent visitation provision. The court may grant reasonable visitation rights, with respect to a child, to a grandparent of the child if the child's parents have notice of the hearing and the court determines all of the following:
(a) The child is a nonmarital child whose parents have not subsequently married each other.
(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.
(c) The child has not been adopted.
(d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.
(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.
(f) The visitation is in the best interest of the child.
A constitutional challenge to a statute presents a question of law reviewed de novo. Nankin v. Vill. of Shorewood, 2001 WI 92, ¶10, 245 Wis. 2d 86, 630 N.W.2d 141. If the statute implicates a fundamental right, this court applies strict scrutiny review and the statute will be upheld only if "narrowly tailored toward furthering [a] compelling state interest."
*503 Mayo v. Wis. Injured Patients and Families Comp. Fund, 2018 WI 78, ¶28, 383 Wis. 2d 1, 914 N.W.2d 678.
¶46 Both the United States Supreme Court as well as this court recognize parents' fundamental liberty interest in raising their children. See *36 Troxel, 530 U.S. at 65, 120 S. Ct. 2054 ("The liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court."); Washington v. Glucksberg, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L.Ed.2d 772 (1997) ("[T]he 'liberty' specially protected by the Due Process Clause includes ... the right[ ] ... to direct the education and upbringing of one's children"); Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982) ("[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment."); Quilloin v. Walcott, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L.Ed.2d 511 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."); Wisconsin v. Yoder, 406 U.S. 205, 231-33, 92 S. Ct. 1526, 32 L.Ed.2d 15 (1972) (The "primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); Prince v. Massachusetts, 321 U.S. 158, 166, 64 S. Ct. 438, 88 L.Ed. 645 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); Pierce v. Society of the Sisters, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L.Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control" among those "rights guaranteed by the Constitution" that "may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the State"); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L.Ed. 1042 (1923) ("[L]iberty guaranteed ... by the Fourteenth Amendment ... include[s] ... the right of the individual to ... establish a home and bring up children."); *37 Tammy W-G v. Jacob T., 2011 WI 30, ¶52, 333 Wis. 2d 273, 797 N.W.2d 854 ("Parents who have developed a relationship with their children have a fundamental liberty interest in the 'care, custody, and control of their children.' ") (quoting Troxel, 530 U.S. at 57, 120 S. Ct. 2054 ); Monroe Cty. Dep't of Human Servs. v. Kelli B., 2004 WI 48, ¶19, 271 Wis. 2d 51, 678 N.W.2d 831 ; Barstad v. Frazier, 118 Wis. 2d 549, 567-68, 348 N.W.2d 479 (1984) ("Under ordinary circumstances, a natural parent has a protected right under both state law and the United States Constitution to rear his or her children free from governmental intervention."); Rick v. Opichka, 2010 WI App 23, ¶¶5, 21, 323 Wis. 2d 510, 780 N.W.2d 159 ; Lubinski v. Lubinski, 2008 WI App 151, ¶¶6, 13, 314 Wis. 2d 395, 761 N.W.2d 676 ; Rogers v. Rogers, 2007 WI App 50, ¶18, 300 Wis. 2d 532, 731 N.W.2d 347.
¶47 Wisconsin Stat. § 767.43(3) implicates this fundamental right of parents by interfering with parents' decisions regarding who may spend time with their children and to what extent. Accordingly, strict scrutiny review applies and the statute's constitutionality depends upon the State's ability to identify a compelling interest furthered by the statute and to demonstrate how the statute is narrowly tailored to meet that compelling state interest. If the statute fails this test, it violates the Constitution.
¶48 What compelling state interest warrants overruling parents' fundamental rights to decide with whom their child spends time? The text of *504 Wis. Stat. § 767.43(3) does not say. It allows the circuit court to supplant parents' judgment with its own if the statutory conditions are satisfied. Our court of appeals implicitly recognized the facial unconstitutionality of this statute in Roger D.H., but "saved" the statute from "facial invalidation" by reading into its text Troxel's requirement that a "fit parent's determination" as to *38 what is best for his child must be presumed correct and given "special weight." Roger D.H. v. Virginia O., 2002 WI App 35, ¶¶13, 18-20, 250 Wis. 2d 747, 641 N.W. 2d 440.[2] The statute contains no such presumption nor does it direct the circuit court to give any weight whatsoever to the parents' determination. More importantly, even if the requirements of Troxel are (however inappropriately)[3] read into the statute, no compelling state interest warrants the State's intrusion in the first place. Consequently, even reading Troxel's requirements into § 767.43(3) will not render the statute constitutional.
¶49 The majority neglects to identify any "compelling state interest" justifying judicial meddling in the decision-making of two fit parents regarding visitation. In conclusory fashion, it asserts that Wis. Stat. § 767.43(3)"is narrowly tailored to further a compelling *39 state interest because it requires a grandparent to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest." Majority op., ¶42. This purported requirement appears nowhere in the text of the statute and it is not the judiciary's job to "tailor" a statute in order to render it constitutional. In similar fashion, the majority invokes the State's interest in acting when "a child's physical or mental health or welfare is in jeopardy." Majority op., ¶24. However, § 767.43(3) contains no requirement that a child's health or welfare be in jeopardy before authorizing the circuit court to grant visitation rights. The majority then mentions "triggering events" that may warrant State intervention such as adoption, death of a parent, divorce, legal separation of married couples, and separation of a child from a parent. See majority op., ¶¶26, 28-31. Again, § 767.43(3) incorporates none of these triggering events. The majority proceeds to cite a litany of foreign statutes in which a compelling state interest appears or into which one has been read by the courts, such as harm to the child. Majority op., ¶¶29-31. Nowhere does the majority actually identify the compelling state interest supporting § 767.43(3), understandably so because there is none.[4] *505 ¶50 The United States Supreme Court declared nearly two decades ago that "so long as a parent adequately cares for his or her children (i.e., is fit), *40 there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Troxel, 530 U.S. at 68-69, 120 S. Ct. 2054. Wisconsin Stat. § 767.43(3) does not distinguish between fit and unfit parents; instead, it allows a circuit court to grant a grandparent visitation rights with respect to a nonmarital child[5] so long as such visitation is in the best interest of the child and the other statutory conditions exist. Unlike other Wisconsin laws implicating parental rights, Chapter 767 fails to identify any compelling state interest justifying this particular governmental intrusion into family matters.
¶51 For example, Chapter 48-The Children's Code-explicitly proclaims its purpose is to protect children from parents whose actions or inaction subject their children or unborn children to an actual or substantial risk of physical or emotional harm and to protect children's "health and safety" by, among other State actions, remedying "any circumstances in the home which might harm the child" or removing a child from the parental home when necessary "to ensure that the needs of a child" are met, including "the need for adequate food, clothing and shelter; the need to be free from physical, sexual or emotional injury or exploitation; the need to develop physically, mentally and emotionally to their potential; and the need for a safe and permanent family." Wis. Stat. § 48.01(1)(a) and (ag). Under these and other circumstances detailed in Chapter 48, a circuit court may take jurisdiction over a child alleged to be in need of protection or services. Wis. Stat. § 48.13.
*41 ¶52 Protecting children from either an actual or substantial risk of physical or emotional harm stemming from parental inability or unwillingness to provide for children's basic needs presents a compelling interest: in the face of such parental deficits, the children's survival depends on the State stepping in. See In re TPR to Diana P., 2005 WI 32, ¶¶20, 32, 279 Wis. 2d 169, 694 N.W.2d 344 (holding the State has a compelling interest to protect children from unfit parents). Likewise, in Chapter 767, the State intervenes in family matters upon marital dissolution when the parents are unable to resolve disputes over custody and physical placement. Wis. Stat. § 767.41. It is the parents' disagreement (which is absent in this case) that leads to State intervention.[6] In contrast, the special grandparent visitation provision set forth in Wis. Stat. § 767.43(3) serves neither to protect a child from harm, nor resolve a dispute between feuding parents. The State intercedes not to protect or remove the child from harm, nor at the invitation of parents unable to resolve their differences, but whenever the circuit court deems the "best interest of the child" warrants the nanny state overriding the joint decision of two fit parents.
*506 ¶53 Other jurisdictions reviewing third-party visitation statutes have determined that the only compelling state interest justifying interference with parents' fundamental rights is harm to the child or unfit *42 parents. See Moriarty v. Bradt, 177 N.J. 84, 827 A.2d 203, 222 (N.J. 2003) ("[w]hen no harm threatens a child's welfare, the State lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit."); see also Jones v. Jones, 2013 UT App 174, ¶¶25-27, 307 P.3d 598 (citing Roth v. Weston, 259 Conn. 202, 789 A.2d 431, 445 (Conn. 2002) ; Beagle v. Beagle, 678 So. 2d 1271, 1276 (Fla. 1996) ; Brooks v. Parkerson, 265 Ga. 189, 454 S.E.2d 769, 772-74 (Ga. 1995) ; Doe v. Doe, 172 P.3d 1067, 1079-80 (Haw. 2007) ; Howard v. Howard, 661 N.W.2d 183, 190 (Iowa 2003) ; Koshko v. Haining, 398 Md. 404, 921 A.2d 171, 191 (Md. 2007) ; Herbst v. Sayre, 971 P.2d 395, 398 (Okla. 1998) ; Hawk v. Hawk, 855 S.W.2d 573, 577 (Tenn. 1993) ; Appel v. Appel, 154 Wash.2d 52, 109 P.3d 405, 410 (Wash. 2005) ). See also E.H.G. v. E.R.G., 73 So. 3d 634, 649-50 (Ala. 2011) ; Blixt v. Blixt, 437 Mass. 649, 774 N.E.2d 1052, 1059 (Mass. 2002) ; Camburn v. Smith, 355 S.C. 574, 586 S.E.2d 565, 580 (S.C. 2003) ; Glidden v. Conley, 2003 VT 12, ¶21, 175 Vt. 111, 820 A.2d 197.
¶54 I agree with these other jurisdictions in concluding that the only compelling interest warranting the State's intrusion upon two parents' fundamental right to raise their child as they mutually see fit is harm to the child. Wisconsin already has expansive statutory provisions set forth in Chapter 48 governing the State's intervention in family matters to protect children from harm that has been or may be inflicted upon them as a result of their parents' incapacities or unfitness. Regardless, nothing in the text of Wis. Stat. § 767.43(3) suggests its purpose is to protect children from harm. When two fit parents agree on the manner in which they raise their child, the child must be in danger in order for the State to inject itself into the private realm of a family. A statute permitting such governmental intrusion based solely on the best interests *43 of a child without being tethered to any compelling interest is constitutionally infirm.[7]
¶55 The majority endeavors to "save" the grandparent visitation statute from facial invalidation by concluding that Wis. Stat. § 767.43(3)"is narrowly tailored to further a compelling state interest" but only if a grandparent overcomes "the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest."[8] Under the majority's logic, § 767.43(3) lacks a compelling state interest-except when it doesn't. The majority attempts to reconcile this inconsistency by deciding that "[t]he Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in *507 A.A.L.'s best interest."[9] The majority does not explain how the constitutionality of a statute could possibly be dependent upon the strength of a party's presentation of evidence. Merely maintaining that *44 under certain circumstances the State may have a compelling interest in interfering with the fundamental right at stake in this case, when the State expresses no compelling interest within the text of the statute itself, cannot "save" a statute subject to strict scrutiny, under any circumstances.
¶56 The majority goes on to caution a circuit court against "improperly substituting its judgment for that of fit parents,"[10] but then allows a petitioning "grandparent to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest,"[11] apparently preserving the ability of courts to substitute their judgment for the judgment of fit parents so long as the petitioning grandparents surmount the heightened evidentiary hurdle imposed by the majority here.
¶57 Even if a compelling state interest could be identified, Wisconsin's grandparent visitation statute is not narrowly tailored. The text of Wis. Stat. § 767.43(3) rather broadly affords circuit courts the discretion to override the wishes of nonmarital parents if the circuit court determines a different visitation schedule is in the best interests of the child. In comparison, other jurisdictions narrowly tailor their statutes to apply only when a grandparent has functionally served as the child's parent for a lengthy period of time so that severing that relationship would cause significant harm to the child's health or well-being. See, e.g., Conn. Gen. Stat. Ann. § 46b-59. Some require that a grandparent demonstrate complete denial of access to the grandchild. See, e.g., *45 Neuhoff v. Ubelhor, 14 N.E.3d 753, 762 (Ind. Ct. App. 2014) (statute requiring consideration of whether visitation has been denied entirely or simply limited; holding "no need for court intervention" when dispute involves grandmother wanting visitation on her terms). Other statutes set aside the wishes of the parents only when a grandparent can establish a custodial parent's unfitness or other extraordinary circumstances affecting the welfare of the child, such as abandonment, neglect or abdication of parental responsibilities.[12] See, e.g., Jones, 307 P.3d 598, ¶8 ; Roth, 789 A.2d at 444-45.
¶58 The majority's opinion in this case changes very little for families similarly situated. In future cases, circuit courts in Wisconsin must follow Troxel and presume that the decisions of fit parents as to what is best for their child is correct, and must give the parents' determinations "special weight" (whatever that means). Then the circuit court must merely find that a petitioning grandparent has overcome the Troxel presumption by clear and convincing evidence, which affords the circuit court the discretion to overrule the decisions of fit parents and instead impose on the family the circuit court's view of the best interests of the child. Surely the fundamental liberty interest of parents in being free from State interference in the care, custody, and upbringing of their families-"perhaps the oldest of the fundamental *508 liberty interests recognized by" the United States Supreme Court-deserves much more protection than this. *46 ¶59 Of course, grandparents can play significant and beneficial roles in the lives of their grandchildren.[13] But "as the constitutional body vested with the power to say 'what the law is,' the judiciary evaluates a statute for its fidelity to the constitution, and 'an act of the legislature, repugnant to the constitution, is void.' Marbury[ v. Madison], 5 U.S. (1 Cranch) [137,] 177 [ (1802) ]. When a law contravenes the constitution, it is our duty to say so." Mayo, 383 Wis. 2d 1, ¶84, 914 N.W.2d 678 (Rebecca Grassl Bradley, J., concurring). The limited reach of the majority's opinion, which declares Wis. Stat. § 767.43(3) unconstitutional only as applied to the parents in this case, exposes nonmarital parents to infringement of their fundamental liberty interests in raising their children as they mutually see fit. "[T]he consequences of upholding unconstitutional laws are not confined to a single party in a single case. Rather, failure to strike down an unconstitutional law harms all of the people of this state in potential perpetuity." Mayo, 383 Wis. 2d 1, ¶85, 914 N.W.2d 678 (Rebecca Grassl Bradley, J., concurring).
II
¶60 Federal and State courts consistently ground the fundamental right of parents to raise their children, without governmental interference, in the "substantive" due process protection of the Fourteenth *47 Amendment. See Troxel, 530 U.S. at 65, 75, 120 S. Ct. 2054. Although application of "substantive" due process in this context has been questioned under an originalist interpretation of the Constitution, in this case, as in Troxel, "neither party has argued that our substantive due process cases were wrongly decided and that the original understanding of the Due Process Clause precludes judicial enforcement of unenumerated rights under that constitutional provision." Id., 530 U.S. at 80, 120 S. Ct. 2054 (Thomas, J., concurring).[14] Because this case, like Troxel, "does not involve a challenge based upon the Privileges [or] Immunities Clause and thus does not present an opportunity to reevaluate the meaning of that Clause," I will not undertake such an analysis. See id. (Thomas, J., concurring).[15] *509 *48 ¶61 The parents in this case do invoke Article I, Section 1 of the Wisconsin Constitution, suggesting the circuit court's visitation order may violate the fundamental right of parents to raise their children under that provision, which provides:
All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.
The parents do not, however, construe or analyze this section of Wisconsin's Constitution, nor do they offer any argument challenging Wis. Stat. § 767.43(3) under the Wisconsin Constitution in any respect. As a result, this case does not present the opportunity to undertake this analysis.[16]
*49 III
¶62 I concur with the majority's conclusion that the circuit court's visitation order unconstitutionally violated Michels' and Lyons' fundamental right to parent their daughter. I part with the majority because I would declare Wis. Stat. § 767.43(3) facially unconstitutional. The statute lacks any compelling state interest and is not narrowly tailored to overcome fit parents' fundamental right to raise their children free from governmental intrusion. I respectfully concur.
¶63 I am authorized to state that Justice DANIEL KELLY joins this concurrence.

Because the majority's opinion applies only to the parents in this case, it will force fit parents to expend significant financial resources (which many parents lack) in order to litigate anew the very issues presented to this court, the adverse emotional impact of which is often suffered most acutely by the child. In this case, the parents' attorney advised the circuit court that: "My clients have no money left. They both are completely taxed out." The circuit court acknowledged the parents "spen[t] a lot of money that could be used for [the child] or other reasons than trying to defend themselves in court[.]" Some courts recognize that the very initiation of a lawsuit where fundamental rights are at stake violates the Constitution, improperly intrudes into the family, and causes trauma, "expense, stress, and [the] pain of litigation." See, e.g., Roth v. Weston, 259 Conn. 202, 789 A.2d 431, 442 (Conn. 2002) (quoted source omitted); Brooks v. Parkerson, 265 Ga. 189, 454 S.E.2d 769, 773 (Ga. 1995) (noting even when child has bond with grandparent, "the impact of a lawsuit to enforce maintenance of the bond over the parents' objection can only have a deleterious effect on the child." (quoted source omitted)).

This court accepted Roger D.H.'s reading of the statute in S.A.M. v. Meister, 2016 WI 22, ¶45, 367 Wis. 2d 447, 876 N.W.2d 746 (referencing Roger D.H. v. Virgina O., 2002 Wi App 35, 250 Wis. 2d 747, 641 N.W.2d 440 ). Meister analyzed a different subsection of the statute-Wis. Stat. § 767.43(1). The majority maintains that declaring Wis. Stat. § 767.43(3) unconstitutional "would necessarily require us to overturn our 2016 decision in Meister." Majority op., ¶33. There is no need to do so because we analyze a different subsection of the statute in this case.

A fundamental canon of statutory construction instructs that "[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est ). That is, a matter not covered is to be treated as not covered." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012). This canon has been described as a "principle ... so obvious that it seems absurd to recite it" because it "is not [the judge's] function or within his power to enlarge or improve or change the law." Id. (quoted source omitted).

The majority's reliance on Rick v. Opichka, 2010 WI App 23, 323 Wis. 2d 510, 780 N.W.2d 159 is misplaced. Opichka dealt with Wis. Stat. § 54.56 (2007-08), which involves grandparent visitation after a parent dies. Opichka, 323 Wis. 2d 510, ¶3, 780 N.W.2d 159. Opichka does not establish a compelling state interest for Wis. Stat. § 767.43(3).

Married couples and their children are spared the State's intrusion provided the parents are fit.

In this case, nothing warranted the State meddling with this family. There was no pending family law matter between the parents. There was no placement or custody battle. Both parents are alive and actively present in their daughter's life. The parents, although living separately, amicably share placement of their daughter and both agreed to keep the grandmother involved in their daughter's life.

The majority misrepresents my recognition of "a compelling state interest for state intervention where parental unwillingness results in a substantial risk of emotional harm to the child" in other Wisconsin statutes as an acknowledgment that "there are circumstances under which the Grandparent Visitation Statute can be constitutionally enforced." Majority op., ¶¶32-33 (emphasis added). The textual identification of harm to a child as a compelling state interest cannot be imported from other Wisconsin statutes into Wis. Stat. § 767.43(3) in order to save it from facial unconstitutionality. To the contrary, it is because § 767.43(3) fails to express any compelling state interest in interfering with fit parents' fundamental right to raise their children that it violates the Constitution.

Majority op., ¶2.

Majority op., ¶41.

Majority op., ¶41.

Majority op., ¶42.

I cite various factors used in foreign statutes not to affirm their constitutionality, but to illustrate how Wisconsin's grandparent visitation statute lacks any tailoring whatsoever. Even a narrowly-tailored statute may nevertheless be unconstitutional. See, e.g., Jones v. Jones, 2013 UT App 174, 307 P.3d 598.

Importantly, and as recognized by the majority, the record in this matter shows Michels and Lyons did not cut the grandmother out of their child's life. The grandmother simply would not accept the child's changing schedule, which reduced or eliminated some of the previous grandmother-grandchild activities. A grandparent's desire for a "better" visitation schedule is insufficient to warrant state intervention. Rogers v. Rogers, 2007 WI App 50, ¶21, 300 Wis. 2d 532, 731 N.W.2d 347.

In its amicus brief, the Cato Institute suggests "[t]he Privileges or Immunities Clause contains what should be the Fourteenth Amendment's primary mechanism for limiting state infringement of substantive rights."

Justice Clarence Thomas repeatedly applies an originalist interpretation of the Privileges or Immunities Clause, identifying it, rather than the Due Process Clause, as the proper source for protecting fundamental constitutional rights, and noting that the United States Supreme Court " 'marginaliz[ed]' the Privileges or Immunities Clause in the late 19th century by defining the collection of rights covered by the Clause 'quite narrowly.' " Timbs v. Indiana, 586 U.S. ----, 139 S. Ct. 682, 691 (2019) (Thomas, J., concurring), quoting McDonald v. City of Chicago, 561 U.S. 742, 808-09, 130 S. Ct. 3020, 177 L.Ed.2d 894 (2010) (Thomas, J., concurring). "When the Fourteenth Amendment was ratified, the terms privileges and immunities had an established meaning as synonyms for rights." Timbs, 586 U.S. at ----, 139 S. Ct. at 692 (Thomas, J. concurring) (internal quotation marks omitted). Historically, people "understood the Privileges or Immunities Clause to guarantee those 'fundamental principles' 'fixed' by the Constitution." Id.

Justice Antonin Scalia opined that "[i]n my view, a right of parents to direct the upbringing of their children is among the 'unalienable Rights' with which the Declaration of Independence proclaims 'all men ... are endowed by their Creator.' ... The Declaration of Independence, however, is not a legal prescription conferring powers upon the courts[.]" Troxel, 530 U.S. at 91, 120 S. Ct. 2054 (Scalia, J., dissenting). In contrast, "[t]he Wisconsin Constitution begins with a Declaration of Rights, echoing language from our nation's Declaration of Independence" and expressly incorporates the people's "inherent right" to "liberty" "recognizing that the proper role of government-the very reason governments are instituted-is to secure our inherent rights, including liberty." Porter v. State, 2018 WI 79, ¶52, 382 Wis. 2d 697, 913 N.W.2d 842 (Rebecca Grassl Bradley and Kelly, J.J., dissenting) (citing Wis. Const. art. I, § 1 ). Not only do courts have the power to enforce rights recognized in Wisconsin's Constitution, they are duty bound to do so. "While the people empower the legislature to enact laws and make policy, the constitution compels the judiciary to protect the liberty of the individual from intrusion by the majority. '[C]ourts of justice are to be considered as bulwarks of a limited Constitution against legislative encroachments[.]' The Federalist No. 78, at 469 (Alexander Hamilton) (Clinton Rossiter ed., 1961)." Porter, 382 Wis. 2d 697, ¶53, 913 N.W.2d 842.