REBECCA FRANK DALLET, J.
*489 *8 ¶1 We accepted certification from the court of appeals to clarify the standard of proof required for a grandparent to overcome the presumption that a fit parent's visitation decision is in the child's best interest.[1] We further resolve an interrelated challenge to the constitutionality of Wis. Stat. § 767.43(3) (2015-16),[2] (the "Grandparent Visitation Statute") as applied to a circuit court order granting a petition for visitation over the objection of two fit parents.[3]
¶2 We recognize that a fit parent has a fundamental liberty interest in the care and upbringing of his or her child and therefore, the Grandparent Visitation Statute must withstand strict scrutiny. We confirm that the Grandparent Visitation Statute is *9 facially constitutional because there are circumstances under which the law can be constitutionally enforced. We determine that the Grandparent Visitation Statute is narrowly tailored to further a compelling state interest because a grandparent must overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. Lastly, we conclude that the Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in A.A.L.'s best interest. The order of the circuit court is vacated.
I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE
¶3 This case arises out of a dispute between the parents of A.A.L., Cacie Michels and Keaton Lyons, and Lyons' mother Jill Kelsey. Lyons and Michels were never married but lived together when A.A.L. was born in October 2009 until they broke up in late 2011. Since then, Michels has had primary custody of A.A.L. and *490 Lyons has had extended periods of placement. Prior to A.A.L. starting kindergarten in the fall of 2015, A.A.L. spent a significant amount of time with Kelsey, including overnight stays. After A.A.L. started kindergarten, Lyons and Michels agreed to reduce the amount of time A.A.L. spent with Kelsey in order to accommodate A.A.L.'s new commitments with school and friends, as well as her previously agreed upon placement time with Lyons on alternate weekends.
¶4 At the end of 2015, Kelsey's relationship with Lyons and Michels began to deteriorate due to a disagreement over a proposed vacation to Disney World *10 and Kelsey's decreased visitation time with A.A.L. Even though the relationship was deteriorating, Lyons and Michels still arranged for Kelsey to spend time with A.A.L. Shortly thereafter, Kelsey intervened in Michels' paternity action and filed a petition for additional visitation pursuant to the Grandparent Visitation Statute.
¶5 At the court trial, Lyons and Michels testified that they decided to decrease Kelsey's visitation time because of the strain on A.A.L.'s schedule. They also expressed concern over Kelsey's judgment, as she allowed A.A.L. to ride a horse without a safety helmet, contrary to their explicit instructions, and she gave four-year-old A.A.L. a sip of alcohol. Both Lyons and Michels testified that granting Kelsey's petition is not in A.A.L.'s best interest. However, both Lyons and Michels also testified that they would not completely eliminate Kelsey's visitation with A.A.L. unless they felt that visitation was unhealthy for A.A.L. or not in her best interest.
¶6 Lyons and Michels also testified at the court trial about a gentleman's agreement that the parties had in place after September 2016. Kelsey was allowed to see A.A.L. every other weekend for five hours, which occurred during the weekends when Lyons had his placement time with A.A.L. Lyons and Michels expressed their frustration with A.A.L. splitting time between three households, as it was difficult and exhausting for her. Lyons also testified about his frustration with the schedule because it was not beneficial for his relationship with A.A.L. Both Lyons and Michels indicated that they preferred an informal schedule they could set themselves to accommodate all of A.A.L.'s commitments and let them "make decisions for [their child] as parents do."
*11 ¶7 Despite finding that Lyons and Michels were not only fit parents but "good parents," the circuit court granted Kelsey's petition. The circuit court ordered visitation at least one Sunday each month for five hours and granted Kelsey "a seven-day period during [A.A.L.'s] summer vacation whereby she may take [A.A.L.] to Disney World or other vacation."
¶8 Lyons and Michels moved for reconsideration of the circuit court's order, asserting that the order violated their due process rights. The circuit court denied the motion and decided that pursuant to Roger D.H. v. Virginia O., 2002 WI App 35, 250 Wis. 2d 747, 641 N.W.2d 440, it could constitutionally overrule Lyons and Michels' visitation decision as long as it applied a presumption in their favor and determined that visitation was in A.A.L.'s best interest.[4]
¶9 The court of appeals certified an appeal to this court to clarify the standard of proof required for a grandparent to overcome the presumption that a fit parent's visitation decision is in the child's best *491 interest. Additionally, the court of appeals asked for clarification as to the impact this court's holding would have on the Meister, Martin L., and Roger D.H. cases. S.A.M. v. Meister, 2016 WI 22, 367 Wis. 2d 447, 876 N.W.2d 746 ; Martin L. v. Julie R.L., 2007 WI App 37, 299 Wis. 2d 768, 731 N.W.2d 288 ; Roger D.H., 250 Wis. 2d 747, 641 N.W.2d 440. In addition to answering these questions, we resolve Lyons and Michels' challenge to the constitutionality of the Grandparent Visitation Statute as applied to the circuit court order overruling their decision regarding the care and upbringing of A.A.L. *12 II. STANDARD OF REVIEW
¶10 Lyons and Michels assert that the Grandparent Visitation Statute is unconstitutional as applied because it violates their substantive due process rights protected by the Fourteenth Amendment to the United States Constitution. State v. Wood, 2010 WI 17, ¶17, 323 Wis. 2d 321, 780 N.W.2d 63. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The United States Supreme Court has long recognized that the Fourteenth Amendment's Due Process Clause includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L.Ed.2d 772 (1997) ; see also Monroe Cty. Dep't of Human Servs. v. Kelli B., 2004 WI 48, ¶19, 271 Wis. 2d 51, 678 N.W.2d 831. "An individual's substantive due process rights protect against a state action that is arbitrary, wrong, or oppressive ...." Wood, 323 Wis. 2d 321, ¶17, 780 N.W.2d 63. "A court's task in a challenge based on substantive due process 'involves a definition of th[e] protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it.' " Id., ¶18 (quoted source omitted).
¶11 There are two major types of constitutional challenges: facial and as-applied. Tammy W-G. v. Jacob T., 2011 WI 30, ¶46, 333 Wis. 2d 273, 797 N.W.2d 854. "When a party challenges a law as being unconstitutional on its face, he or she must show that the law cannot be enforced 'under any circumstances.' "
*13 Mayo v. Wisconsin Injured Patients and Families Comp. Fund, 2018 WI 78, ¶33, 383 Wis. 2d 1, 914 N.W.2d 678 (quoted source omitted). On the other hand, in an as-applied challenge, we consider the facts of the particular case in front of us and "the challenger must show that his or her constitutional rights were actually violated." Wood, 323 Wis. 2d 321, ¶13, 780 N.W.2d 63.
¶12 Whether a statute, as applied, violates the constitutional right to due process is a question of law that this court reviews de novo. Kelli B., 271 Wis. 2d 51, ¶16, 678 N.W.2d 831. In an as-applied challenge, this court presumes that the statute is constitutional, but does not presume that the State applied the statute in a constitutional manner. Tammy W-G., 333 Wis. 2d 273, ¶48, 797 N.W.2d 854. To prevail on an as-applied challenge, the challenging party "must prove beyond a reasonable doubt that as applied to him or her the statute is unconstitutional." Mayo, 383 Wis. 2d 1, ¶58, 914 N.W.2d 678. If successful, the operation of law is void only as to the challenging party. Wood, 323 Wis. 2d 321, ¶13, 780 N.W.2d 63.
¶13 Lyons and Michels challenge the interpretation and application of the Grandparent Visitation Statute, which reads:
*492 (3) The court may grant reasonable visitation rights, with respect to a child, to a grandparent of the child if the child's parents have notice of the hearing and the court determines all of the following:
(a) The child is a nonmarital child whose parents have not subsequently married each other.
(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.
*14 (c) The child has not been adopted.
(d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.
(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.
(f) The visitation is in the best interest of the child.
Wis. Stat. § 767.43(3). The meaning and application of a statute are questions of law that this court reviews de novo. Meister, 367 Wis. 2d 447, ¶19, 876 N.W.2d 746.
III. ANALYSIS
¶14 We first recognize the fundamental liberty interest at stake and establish the appropriate level of scrutiny to apply to the Grandparent Visitation Statute. We then determine the constitutionality of the Grandparent Visitation Statute facially and as applied and, as a part of the analysis, we answer the certified question.
A. Lyons and Michels have a fundamental liberty interest in the care and upbringing of A.A.L.
¶15 Lyons and Michels assert that they have a fundamental liberty interest in the care and upbringing of A.A.L. and contend that the circuit court infringed upon this interest when it overruled their decision regarding A.A.L.'s visitation with Kelsey. "[T]he interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized" by the *15 United States Supreme Court. Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000). This fundamental liberty protected by the Due Process Clause includes the right of parents to "establish a home and bring up children," Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L.Ed. 1042 (1923), and "to direct the upbringing and education of children under their control." Pierce v. Society of Sisters, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L.Ed. 1070 (1925). See also Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982) (noting the United States Supreme Court's "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"); Prince v. Massachusetts, 321 U.S. 158, 166, 64 S. Ct. 438, 88 L.Ed. 645 (1944) (acknowledging the existence of a "private realm of family life which the state cannot enter.")
¶16 In Troxel, a plurality of the United States Supreme Court concluded that a Washington statute allowing a court to grant third-party visitation whenever "visitation may serve the best interest of the child" violated a fit parent's due process right to make decisions concerning the care, custody, and control of her daughters. Troxel, 530 U.S. at 61, 120 S. Ct. 2054. The Troxel court held that "so long as a *493 parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent." Id. at 68-69, 120 S. Ct. 2054. A majority of the United States Supreme Court Justices in Troxel recognized that a fit parent's fundamental right to direct the upbringing of his or her child is implicated where a non-parent third-party petitions for visitation.[5] *16 ¶17 When faced with the question of whether a parent who has developed a relationship with his or her child has a fundamental liberty interest in the child's care and upbringing, this court has answered in the affirmative. See, e.g., Tammy W-G., 333 Wis. 2d 273, ¶52, 797 N.W.2d 854 ("Parents who have developed a relationship with their children have a fundamental liberty interest in the 'care, custody, and control of their children.' " (quoted source omitted)); Kenosha Cty. Dep't of Human Servs. v. Jodie W., 2006 WI 93, ¶41, 293 Wis. 2d 530, 716 N.W.2d 845 ("Because [the mother] has a fundamental liberty interest in parenting [her son], any statute that infringes upon this interest is subject to strict scrutiny review"); Kelli B., 271 Wis. 2d 51, ¶23, 678 N.W.2d 831 ("[T]he question is whether a parent who has a substantial relationship with his or her child has a fundamental liberty interest in parenting the child. Our case law recognizes this fundamental liberty interest."). We conclude that in accordance with jurisprudence from the United States Supreme Court and this court, Lyons and Michels have a fundamental liberty interest in the care and upbringing of A.A.L.
B. The Grandparent Visitation Statute must withstand strict scrutiny because it directly and substantially infringes upon a fundamental liberty interest.
¶18 A statute which directly and substantially infringes upon a fundamental liberty interest must withstand strict scrutiny: it must be narrowly tailored to serve a compelling state interest. See, e.g., Reno v. Flores, 507 U.S. 292, 302, 113 S. Ct. 1439, 123 L.Ed.2d 1 (1993). Although Kelsey seemingly acknowledges that Lyons and Michels *17 have a fundamental liberty interest in the care and upbringing of A.A.L., she asserts that this court should not apply strict scrutiny because this was a "minor intrusion" on a fundamental liberty interest. Kelsey relies on the Troxel plurality, which avoided "the precise scope of the parental due process right in the visitation context." Troxel, 530 U.S. at 73, 120 S. Ct. 2054.
¶19 Because matters involving visitation occur on a case-by-case basis, the Troxel court was "hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter." Id. The plurality in Troxel thus left the constitutionality of any specific statute awarding visitation to be determined by a state court based upon the manner in which the statute is applied. Id.
¶20 Although the Troxel plurality did not employ a strict scrutiny analysis in striking down a broad-sweeping third-party visitation statute,[6] the United States *494 Supreme Court reaffirmed in Troxel that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." Id. at 72-73, 120 S. Ct. 2054. The Troxel court held that if a fit parent's decision regarding grandparent visitation becomes subject to judicial review, a court must give "special weight" to a parent's determination of what is in the child's best interest. Id. at 68-70, 120 S. Ct. 2054. *18 ¶21 Post-Troxel, the majority of courts that have considered this issue have concluded that statutes permitting a grandparent to petition for visitation infringe upon the fundamental right to parental autonomy and therefore are subject to strict scrutiny. See, e.g., Moriarty v. Bradt, 177 N.J. 84, 827 A.2d 203, 222 (N.J. 2003) ("Because the Grandparent Visitation Statute is an incursion on a fundamental right (the right to parental autonomy) ... it is subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest"); see also Doe v. Doe, 172 P.3d 1067 (Haw. 2007) ; Koshko v. Haining, 398 Md. 404, 921 A.2d 171 (Md. 2007) ; Howard v. Howard, 661 N.W.2d 183 (Iowa 2003) ; Roth v. Weston, 259 Conn. 202, 789 A.2d 431 (Conn. 2002).
¶22 We conclude that because the Grandparent Visitation Statute directly and substantially implicates a fit parent's fundamental liberty interest in the care and upbringing of his or her child, it is subject to strict scrutiny review.
C. We confirm that the Grandparent Visitation Statute is facially constitutional because there are circumstances under which the law can be constitutionally enforced.
¶23 When we apply strict scrutiny to a statute, we will conclude it is facially constitutional only if it is narrowly tailored to further a compelling state interest. See Milwaukee Branch of NAACP v. Walker, 2014 WI 98, ¶22, 357 Wis. 2d 469, 851 N.W.2d 262. Kelsey asserts that the Grandparent Visitation Statute furthers a compelling state interest "to contribute to the child's well-being by providing a sense of continuity"
*19 within a non-intact family.[7] Kelsey further maintains that the rebuttable presumption that a fit parent's decision regarding grandparent visitation is in the best interest of the child as set forth in Roger D.H., 250 Wis. 2d 747, ¶¶19-21, 641 N.W.2d 440, ensures that visitation orders are narrowly tailored to achieve this purpose. In Roger D.H., the court of appeals saved the Grandparent Visitation Statute from facial invalidity by reading into the statute a requirement that circuit courts apply the presumption that a fit parent's visitation decision is in the best interest of his or her child, in accordance with Troxel.[8] Roger D.H, 250 Wis. 2d 747, ¶12, 641 N.W.2d 440. According to Kelsey, the presumption, followed by the best interest inquiry, resulted in a grandparent visitation order in this case that was narrowly *495 tailored to protect Lyons and Michels' fundamental liberty interest in the care and upbringing of A.A.L.
¶24 The State must respect a fit parent's fundamental liberty interest to make decisions regarding the care, custody, and control of his or her child, yet also recognize when intervention may be necessary to protect a child's best interest. Where a child's physical *20 or mental health or welfare is in jeopardy, the State has a well-established legitimate interest under its parens patriae power, acting from the viewpoint and in the interest of the child. See Santosky, 455 U.S. at 766, 102 S. Ct. 1388 ; see also Parham v. J.R., 442 U.S. 584, 603, 99 S. Ct. 2493, 61 L.Ed.2d 101 (1979) ("[A] state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized."). Pursuant to this court's jurisprudence, visitation law is "concerned with identifying the triggering events that may justify state intervention," which must be more than a claim that third-party visitation is in a child's best interest. See Holtzman v. Knott, 193 Wis. 2d 649, 668, 533 N.W.2d 419 (1995).
¶25 Historically, there have been three main avenues to achieving grandparent visitation, now codified at: (1) Wis. Stat. § 48.925, which allows a relative who has maintained a relationship with a child similar to a parent-child relationship to seek visitation after a child has been adopted by a stepparent or relative;[9]
*21 (2) Wis. Stat. § 54.56, which allows a grandparent to file a petition for visitation upon the death of a parent of the child;[10] and (3) Wis. Stat. § 767.43, which encompasses the Grandparent Visitation Statute at issue in this case.
¶26 An analysis of the Wisconsin statutes that allow a grandparent to petition for visitation illustrates that the events triggering intervention by the State historically related to circumstances separating families. See Holtzman, 193 Wis. 2d at 680, 533 N.W.2d 419. This court has previously detailed the legislative history of the current Wis. Stat. ch. 767 visitation statute, which began with the enactment of Wis. Stat. § 247.24(1)(c) (1975-76).[11]
*496 Id., 193 Wis. 2d 649, 668, 533 N.W.2d at 668-78. Section 247.24(1)(c) permitted the circuit court to grant grandparent visitation only upon the rendering of a judgment of annulment, divorce or legal separation. Id. Even after this limiting language was eliminated with the codification of *22 Wis. Stat. § 767.245(4) (1977-78), the legislative history demonstrates an intent by the legislature to address visitation issues prompted by the divorce or legal separation of a married couple. Id., 193 Wis. 2d 649, 668, 533 N.W.2d at 670-73.[12]
¶27 The Grandparent Visitation Statute was enacted to provide grandparents with the ability to petition for visitation outside of a divorce or visitation proceeding. See Drafting File for 1995 Act 68, Analysis by the Legislative Reference Bureau of 1995 S.B. 55, Legislative Reference Bureau, Madison, Wis. It is still limited, however, to a family unit involving a "nonmarital child" whose parents have not subsequently married each other and who has not been adopted. See Wis. Stat. §§ 767.43(3)(a) and (c).
¶28 In cases interpreting visitation statutes, Wisconsin courts have permitted intervention by the State to protect the child's best interest in circumstances where a child is being separated from a parent. See Holtzman, 193 Wis. 2d at 680, 533 N.W.2d 419 ; see also Cox v. Williams, 177 Wis. 2d 433, 502 N.W.2d 128 (1993) ; Sporleder v. Hermes, 162 Wis. 2d 1002, 471 N.W.2d 202 (1991) ; Soergel v. Raufman, 154 Wis. 2d 564, 453 N.W.2d 624 (1990). More recently, in upholding Wis. Stat. § 54.56(2) against an equal protection challenge, the court of appeals reasoned that maintaining the contiguity of a relationship with a grandparent when a parent dies creates a compelling state interest to protect a child's best interest.
*23 Rick v. Opichka, 2010 WI App 23, ¶22, 323 Wis. 2d 510, 780 N.W.2d 159. The Opichka court also reasoned that the rebuttable presumption in favor of the surviving parent ensures that the statute is narrowly tailored to achieve this compelling interest. Id.
¶29 Similarly, other jurisdictions recognize the appropriateness of a court interfering in a parent-child relationship to protect the child's best interest under circumstances where a family unit is dissolving and a parent seeks to sever the child's relationship with a grandparent with whom the child is emotionally attached. Prior to granting a petition for grandparent visitation, a majority of state statutes require a triggering event dissolving the family unit, such as the death or abandonment of a parent, divorce, or the child residing with a third party prior to granting a petition for grandparent visitation. See, e.g., Ala. Code 1975 § 30-3-4.2 (Alabama); A.R.S. § 25-409 (Arizona); A.C.A. § 9-13-103 (Arkansas); C.R.S.A. § 19-1-117 (Colorado); IC 31-17-5-1 (Indiana); M.G.L.A. 119 § 39D (Massachusetts); M.C.L.A. 722.27b (Michigan); 23 Pa.C.S.A. § 5325 (Pennsylvania); V.T.C.A., Family Code § 153.433 (Texas). Like the Grandparent Visitation Statute, some states include a child born out of wedlock as a triggering event to a petition for grandparent *497 visitation. See, e.g., Ala. Code 1975 § 30-3-4.2 (Alabama); A.R.S. § 25-409 (Arizona); IC 31-17-5-1 (Indiana); M.G.L.A. 119 § 39D (Massachusetts); 43 Okl.St.Ann. § 109.4 (Oklahoma).
¶30 In addition to the statutory precursor of a dissolving family unit, the majority of jurisdictions also require a grandparent to demonstrate that absent visitation, the child will suffer some form of emotional harm. This harm requirement appears either within *24 state statutes or has been read into the statutes by courts in order to survive constitutional challenges.[13]
¶31 A review of cases where other courts have upheld grandparent visitation orders indicate the presence of a relationship similar to that of a primary caregiver between the grandparents and grandchildren and a parent's abrupt attempt to end that relationship. See, e.g., Smith v. Wilson, 90 So.3d 51 (Miss. 2012) (visitation order upheld where children lived with maternal grandparents for several years after mother's death and father ended visitation once remarried); Uzelac v. Thurgood, 144 P.3d 1083 (Ut. 2006) (visitation order upheld where child lived with maternal grandparents for three years and was regularly cared for by her grandparents throughout her life and father denied grandparent visitation following mother's sudden death); Spaulding v. Williams, 793 N.E.2d 252 (Ind. Ct. App. 2003) (visitation order upheld where the child and mother lived with maternal grandparents and they took care of the child on a daily basis but father denied visitation for five months after mother's death).
¶32 The concurrence asserts that the Grandparent Visitation Statute is facially unconstitutional but fails to meet the high burden required for a facial *25 challenge. In order to succeed on a facial challenge, the "challenger must meet the highest level of proof, beyond a reasonable doubt." Mayo, 383 Wis. 2d 1, ¶33, 914 N.W.2d 678 ; see also ¶72 ("A facial challenge requires near-absolute proof that any application of the statute is unconstitutional.") (R.G. Bradley, J., concurring). A facial challenge therefore "attacks the law itself as drafted by the legislature, claiming the law is void from its beginning to the end and that it cannot be constitutionally enforced under any circumstances." Society Ins. v. LIRC, 2010 WI 68, ¶26, 326 Wis. 2d 444, 786 N.W.2d 385. The concurrence acknowledges a compelling state interest for state intervention where parental unwillingness results in a substantial risk of emotional harm to the child, concurrence, ¶¶52-54, and thus fails to demonstrate that "the law cannot be enforced 'under any circumstances.' " Mayo, 383 Wis. 2d 1, ¶33, 914 N.W.2d 678 (quoted source omitted).
¶33 Furthermore, a determination that the Grandparent Visitation Statute is facially unconstitutional would necessarily require us to overturn our 2016 decision in Meister, 367 Wis. 2d 447, 876 N.W.2d 746. In Meister, we denied a facial challenge to Wis. Stat. § 767.43(1), a provision that broadly allows reasonable grandparent visitation with marital children upon a circuit court's determination *498 that the visitation is in the child's best interest.[14] In so doing, we concluded that the reasoning employed in Roger D.H. upholding the facial validity of *26 the Grandparent Visitation Statute was "equally appropriate with regard [to] [ ] § 767.43(1)." Id., ¶45. We do not disturb Meister and Roger D.H. to the extent that they upheld the Grandparent Visitation Statute as facially constitutional.[15] Because there are circumstances under which the Grandparent Visitation Statute can be constitutionally enforced, as acknowledged by the concurrence, the Grandparent Visitation Statute remains constitutional on its face.
D. The Grandparent Visitation Statute is narrowly tailored to further a compelling state interest because a grandparent must overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest.
¶34 We turn to the certified question in the context of the constitutional challenge and ask: is the Grandparent Visitation Statute narrowly tailored to further a compelling state interest where a grandparent is required to overcome the presumption in favor of *27 a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest? The degree of proof in a particular proceeding is traditionally for the judiciary to decide. Woodby v. Immigration and Naturalization Serv., 385 U.S. 276, 284, 87 S. Ct. 483, 17 L.Ed.2d 362 (1966). We have previously identified two different burdens of proof that apply in civil actions: "preponderance of the evidence" and "clear and convincing evidence." State v. Walberg, 109 Wis. 2d 96, 102, 325 N.W.2d 687 (1982). The preponderance of the evidence standard applies in ordinary civil actions. Id. The clear and convincing standard applies in cases where public policy requires a higher standard of proof than in the ordinary civil action. Id. This so-called middle burden of proof has been required in cases where the individual interests at stake are " 'particularly important' " and " 'more substantial than mere loss of money.' " Santosky, 455 U.S. at 756, 102 S. Ct. 1388 (quoting Addington v. Texas, 441 U.S. 418, 424, 99 S. Ct. 1804, 60 L.Ed.2d 323 (1979) ). For example, Wisconsin courts have applied a clear and convincing standard in cases involving fraud, undue influence, prosecutions of civil ordinance violations, and civil commitment. See Walberg, 109 Wis. 2d at 102, 325 N.W.2d 687 ; see also State v. West, 2011 WI 83, ¶¶76-77, 336 Wis. 2d 578, 800 N.W.2d 929.
¶35 A number of courts require clear and convincing evidence to overcome the presumption that a fit parent's visitation *499 decision is in the child's best interest.[16] These courts maintain that the elevated *28 standard of proof is necessary to protect the rights of parents. See, e.g., Polasek v. Omura, 332 Mont. 157, 136 P.3d 519, 523 (Mt. 2006) (reasoning that the close scrutiny that applies to any infringement on a person's right to parent a child requires a clear and convincing standard); N.F. v. R.A., 137 P.3d 318, 319 (Colo. 2006) (maintaining that the clear and convincing evidence standard will accord due process to parents as it does in the parental rights termination context); Vibbert v. Vibbert, 144 S.W.3d 292, 295 (Ky. Ct. App. 2004) (noting that the clear and convincing evidence standard applies because " 'the individual interests at stake ... are both particularly important and more substantial than mere loss of money' "); Evans v. McTaggart, 88 P.3d 1078, 1089 (Alaska 2004) (holding that a clear and convincing evidence standard provides effective protection for a parent's choice).[17]
¶36 "In cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual *29 liberty." Addington, 441 U.S. at 425, 99 S. Ct. 1804 (quoted source omitted). As recognized by the Troxel court, a fit parent's interest in the care, custody, and control of his or her child "is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel, 530 U.S. at 65, 120 S. Ct. 2054. We therefore conclude that the Grandparent Visitation Statute is narrowly tailored to further a compelling state interest because a grandparent must overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest.
E. We modify and clarify the holdings in Martin L. and Roger D.H.
¶37 We next explain the impact of this constitutional analysis on the holdings in Martin L. and Roger D.H. We modify the holding in Roger D.H. to require a grandparent to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. While the court of appeals in Roger D.H. articulated the appropriate presumption in favor of a fit parent's decision, the court of appeals went on to state that "[a]t the same time, we observe that this is only a presumption and the circuit court is still obligated to make its own assessment of the best interest of the child."
*500 Roger D.H., 250 Wis. 2d 747, ¶19, 641 N.W.2d 440. We determine that a circuit court should consider the nature and extent of grandparent visitation only if a grandparent overcomes the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. A circuit court should not substitute *30 its judgment for the judgment of a fit parent even if it disagrees with the parent's decision.
¶38 Likewise, we must clarify Martin L., 299 Wis. 2d 768, 731 N.W.2d 288, a case involving a petition for grandparent visitation following the death of a parent pursuant to Wis. Stat. § 54.56. In Martin L., the court of appeals applied the analysis as stated in Roger D.H., implying that in deciding a petition for grandparent visitation, a circuit court must always apply its own assessment of what is in the child's best interest. Martin L., 299 Wis. 2d 768, ¶12, 731 N.W.2d 288. The rebuttable presumption, as set forth in Roger D.H. and applied by the court in Martin L., was merely a restatement of the best interest of the child standard and allowed a circuit court to easily intervene to second guess a fit parent's decision. We clarify Martin L., as we did Roger D.H., to require a petitioning grandparent to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. We emphasize that a circuit court assesses the nature and extent of visitation only after that burden has been met.
F. The Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in A.A.L.'s best interest.
¶39 Finally, we assess the merits of Lyons and Michels' as-applied challenge by considering the facts of this case, not hypothetical facts from different situations. See State v. Hamdan, 2003 WI 113, ¶43, 264 Wis. 2d 433, 665 N.W.2d 785. There is no dispute that Lyons and Michels are fit parents and the circuit *31 court found them to be "good parents."[18] The issue is whether under these circumstances the circuit court infringed upon Lyons and Michels' fundamental liberty interest in the care and upbringing of A.A.L. when it granted Kelsey's petition for grandparent visitation.
¶40 At the hearing on Lyons and Michels' motion for reconsideration, the circuit court stated that according to Roger D.H., it had "applied the presumption a fit parent's decision on placement is in the child's best interest, rebuttable in the Court's discretion."[19] In deciding to grant Kelsey's petition over the objection of Lyons and Michels, the circuit court relied upon A.A.L.'s significant contact with Kelsey over the years and the guardian ad litem's recommendation. The circuit court also stated that it did not "think it was fair to [A.A.L.] then or now to just cut off cold turkey her contact with grandma." The circuit court concluded that the "bare bones" schedule it set forth was therefore in A.A.L.'s best interest.[20]
*501 ¶41 The Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in A.A.L.'s best interest.
*32 Although the circuit court asserted that it applied a presumption that Lyons and Michels' decision was in A.A.L.'s best interest, the decision of the circuit court exemplifies a circuit court improperly substituting its judgment for that of fit parents. Lyons and Michels did not seek to eliminate Kelsey's visitation entirely and there is no indication that they would deprive A.A.L. of having a relationship with Kelsey. In fact, they testified that they would not eliminate Kelsey's visitation with A.A.L. unless they felt that it was unhealthy for A.A.L. or not in her best interest. At the time Kelsey petitioned for visitation there had been no change in circumstances involving A.A.L.'s family unit, as Lyons and Michels had not lived together since A.A.L. was a small child. Kelsey's desire to merely secure a more generous and predictable visitation schedule is not enough to overcome the presumption in favor of Lyons and Michels' visitation decision and demonstrate that their decision is not in A.A.L.'s best interest, thus barring intervention by the State. See Rogers v. Rogers, 2007 WI App 50, 300 Wis. 2d 532, 731 N.W.2d 347 (holding that state interference in the form of court ordered placement with grandparents was unwarranted where the parents maintained considerable contact between their child and her grandparents, just not as much as the grandparents desired).
IV. CONCLUSION
¶42 In sum, a fit parent has a fundamental liberty interest in the care and upbringing of his or her child and therefore to be applied constitutionally, the Grandparent Visitation Decision must withstand strict scrutiny. We confirm that the Grandparent Visitation Statute is facially constitutional because there are circumstances under which the law can be constitutionally *33 enforced. We conclude that the Grandparent Visitation Statute is narrowly tailored to further a compelling state interest because it requires a grandparent to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. Lastly, we conclude that the Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in A.A.L.'s best interest.
¶43 Based upon the record below, we decline to remand the case to the circuit court. The visitation order violated the constitutional rights of Lyons and Michels and we decline to force the parties into additional litigation that would further burden Lyons and Michels' fundamental liberty interest in the care and upbringing of A.A.L.
By the Court. -Order of the circuit court is vacated.

Michels v. Lyons, No. 2017AP1142, unpublished certification (Wis. Ct. App. May 8, 2018).

All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

The Honorable James M. Isaacson of Chippewa County Circuit Court presided.

In its order regarding Lyons and Michels' motion for reconsideration, the circuit court limited the date range for Kelsey's summer trip with A.A.L. and provided some guidelines as to the trip.

Troxel v. Granville, 530 U.S. 57, 67-68, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000) (O'Connor, J., Rehnquist, J., Ginsburg, J., Breyer, J.), 77-79 (Souter, J., concurring), 80 (Thomas, J., concurring), 95 (Kennedy, J., dissenting).

However, Justice Clarence Thomas in his Troxel concurrence made clear that he would apply strict scrutiny: "[T]he State of Washington lacks even a legitimate governmental interest-to say nothing of a compelling one-in second-guessing a fit parent's decision regarding visitation with third parties." Troxel, 530 U.S. at 80, 120 S. Ct. 2054.

We recognize that there may be substantial benefits to a child to have close and sustained ties with extended family and that grandparents can serve an important role in a child's life. See, e.g., Roth v. Weston, 259 Conn. 202, 789 A.2d 431, 447 (Conn. 2002). We also recognize that in many families the preservation of intergenerational relationships has value as a social ideal. See Herbst v. Sayre, 971 P.2d 395, 399 (Okla. 1998).

In Roger D.H. v. Virginia O., 2002 WI App 35, ¶19, 250 Wis. 2d 747, 641 N.W.2d 440, the court of appeals concluded that the circuit court improperly read into Wis. Stat. § 767.245(3), the prior version of the Grandparent Visitation Statute, a requirement that a circuit court find a parent unfit prior to interfering with the parent's visitation decision.

Wisconsin Stat. § 48.925, in pertinent part, reads:
Upon petition by a relative who has maintained a relationship similar to a parent-child relationship with a child who has been adopted by a stepparent or relative, the court, subject to subs. (1m) and (2), may grant reasonable visitation rights to that person if the petitioner has maintained such a relationship within 2 years prior to the filing of the petition, if the adoptive parent or parents, or, if a birth parent is the spouse of an adoptive parent, the adoptive parent and birth parent, have notice of the hearing and if the court determines all of the following:
(a) That visitation is in the best interest of the child.
(b) That the petitioner will not undermine the adoptive parent's or parents' relationship with the child or, if a birth parent is the spouse of an adoptive parent, the adoptive parent's and birth parent's relationship with the child.
(c) That the petitioner will not act in a manner that is contrary to parenting decisions that are related to the child's physical, emotional, educational or spiritual welfare and that are made by the adoptive parent or parents or, if a birth parent is the spouse of an adoptive parent, by the adoptive parent and birth parent.

Wisconsin Stat. § 54.56, in pertinent part, reads: "If one or both parents of a minor are deceased and the minor is in the custody of the surviving parent or any other person, a grandparent or stepparent of the minor may petition for visitation privileges with respect to the minor ...." Pursuant to the statute, the circuit court must determine that the visitation is in the best interest of the minor.

Wisconsin Stat. § 247.24(1)(c) (1975-76) reads:
(1) In rendering a judgment of annulment, divorce or legal separation, the court may:
....
(c) Grant reasonable visitation privileges to a grandparent of any minor child if the court determines that it is in the best interest and welfare of the child and issue any necessary order to enforce the same.

According to a Legislative Reference Bureau analysis, the 1975 precursor to the Wisconsin Stat. ch. 767 grandparent visitation statute "codifies the authority of the court in actions affecting marriage to grant visitation privileges to grandparents where it is in the best interest of the child." See Holtzman v. Knott, 193 Wis. 2d 649, 682 n.28, 533 N.W.2d 419 (1995).

See, e.g., Jones v. Jones, 2013 UT App 174, 307 P.3d 598 (Utah Ct. App. 2013) ; Doe v. Doe, 172 P.3d 1067 (Haw. 2007) ; Koshko v. Haining, 398 Md. 404, 921 A.2d 171 (Md. 2007) ; Howard v. Howard, 661 N.W.2d 183 (Iowa 2003) ; Moriarty v. Bradt, 177 N.J. 84, 827 A.2d 203 (N.J. 2003) ; Glidden v. Conley, 175 Vt. 111, 820 A.2d 197 (Vt. 2003) ; Roth, 259 Conn. 202, 789 A.2d 431 (Conn. 2002), superseded by statute, Conn. Gen. Stat. § 46b-59 (2018); Williams v. Williams, 256 Va. 19, 501 S.E.2d 417 (Va. 1998) ; Brooks v. Parkerson, 265 Ga. 189, 454 S.E.2d 769 (Ga. 1995) ; Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993).

In S.A.M. v. Meister, 2016 WI 22, ¶2, 367 Wis. 2d 447, 876 N.W.2d 746, this court analyzed the statutory text of Wis. Stat. § 767.43(1), which allowed a " 'grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child' " to file for visitation. This court concluded that the "parent-child relationship" requirement applied only to the " 'person' " category and not to grandparents, great-grandparents, and stepparents. Id.

The doctrine of stare decisis is of particularly important concern here where this court "has authoritatively interpreted a statute" and the legislature "remains free to alter its construction" if it believes that we interpreted the statute incorrectly. Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶45, 281 Wis. 2d 300, 697 N.W.2d 417. To overturn a prior interpretation there must be a showing that the decision was " 'mistaken but also that it was objectively wrong, so that the court has a compelling reason to overrule it.' " Id. (citing Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405 ).

See, e.g., Walker v. Blair, 382 S.W.3d 862, 871 (Ky. 2012) ; Zimmer v. Zimmer, 781 N.W.2d 482, 488 (S.D. 2010) ; SooHoo v. Johnson, 731 N.W.2d 815, 824 (Minn. 2007) ; N.F. v. R.A., 137 P.3d 318, 327 (Colo. 2006) ; Polasek v. Omura, 332 Mont. 157, 136 P.3d 519, 523 (Mont. 2006) ; Hamit v. Hamit, 271 Neb. 659, 715 N.W.2d 512 (Neb. 2006) ; Vibbert v. Vibbert, 144 S.W.3d 292, 295 (Ky. Ct. App. 2004) ; Camburn v. Smith, 355 S.C. 574, 586 S.E.2d 565, 580 (S.C. 2003) ; L.B.S. v. L.M.S., 826 So.2d 178, 186 (Ala. 2002).

Most of these courts construe their statutes to also require proof of a significant bond between a grandparent and grandchild that, if severed, would threaten the welfare of the child. See, e.g., Walker, 382 S.W.3d at 871-72 (Ky. 2012) (reasoning that a grandparent must show that they "shared such a close bond that to sever contact would cause distress to the child," and that there was a harm standard "implicit" in the statutory factors); Zimmer, 781 N.W.2d at 489 (S.D. 2010) (holding that the circuit court can rely on "special factors" such as "physical or emotional harm to the grandchild if visitation is denied or limited"); Camburn, 586 S.E.2d at 579-80 (S.C. 2003) (requiring a grandparent to show by clear and convincing evidence that the parent is unfit or that there are "compelling circumstances, such as significant harm to the child").

If parental fitness were an issue, Wis. Stat. ch. 48 may be implicated.

The circuit court did not reference the factors laid out in the Grandparent Visitation Statute in its oral ruling on Kelsey's petition. It was not until the hearing on Lyons and Michels' motion for reconsideration that the circuit court articulated its reasons for granting Kelsey's petition and the required presumption.

Although the circuit court referred to the schedule as "bare bones," a minimum of five hours a month and one week every summer with no travel restrictions is not insignificant.