COURT OF APPEALS
DECISION
DATED AND FILED

April 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2022AP2046**

Cir. Ct. No.  2021FA48

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE GRANDPARENTAL VISITATION OF M. E. H., A. J. H., AND P. E. H.:

ROBERT CARDINAL AND ANDREA CARDINAL,

    PETITIONERS-APPELLANTS,

  V.

JONATHAN HOLGER AND NICOLE STROOZAS,

    RESPONDENTS-RESPONDENTS.

       APPEAL from orders of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed*.

       Before Stark, P.J., Hruz, and Gill, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert and Andrea Cardinal appeal an order denying their petition for grandparent visitation with the three minor children of their daughter, Nicole Stroozas, and Nicole's former spouse, Jonathan Holger.[1] The Cardinals also appeal an order denying their motion for reconsideration. The Cardinals contend that the circuit court applied an incorrect legal standard and otherwise erroneously exercised its discretion by denying their petition for grandparent visitation. We reject these arguments and affirm.[2]

## BACKGROUND

¶2 Nicole and Jonathan were married from January 2009 until August 2017, and three children were born during their marriage. Under the terms of their divorce judgment, Nicole and Jonathan were awarded equal placement and joint legal custody of their three children. Following her divorce from Jonathan, Nicole married Michael Stroozas, who has three children from a prior relationship.

¶3 In February 2021, the Cardinals filed a petition for grandparent visitation with Nicole and Jonathan's children. Nicole and Jonathan both filed responses opposing the petition. An evidentiary hearing on the petition took place over two days during November 2021 and April 2022.

¶4 At the hearing, evidence was introduced that Nicole had terminated contact between the Cardinals and the children on December 5, 2020. Prior to that

---

[1] We refer to these individuals by their first names throughout the remainder of this opinion. We refer to Robert and Andrea, collectively, as "the Cardinals." Andrea is Nicole's biological mother, and Robert adopted Nicole when she was an adult. We note that Jonathan participated in the circuit court proceedings, but he has not filed a brief in this appeal.

[2] On appeal, the Cardinals do not raise any independent arguments regarding the circuit court's denial of their motion for reconsideration. Accordingly, we do not separately address the order denying that motion.

date, the Cardinals had significant involvement in the children's lives, which included taking the children to lunch, volunteering at the children's school, taking the children on vacation, transporting the children to extracurricular activities, taking the children to events like movies and story time at the local library, and having the children sleep over at the Cardinals' home.

¶5    Robert testified that prior to 2017, the Cardinals saw the children almost every day, and from 2017 until 2020, the Cardinals saw the children at least once a week. Evidence was also introduced that Nicole, Jonathan, and the children lived with the Cardinals at the Cardinals' home at various times between 2009 and 2017. In addition, Andrea testified that after Nicole and Jonathan's divorce, the children stayed with the Cardinals on two occasions when Nicole and Michael went away on trips.

¶6    Andrea testified regarding the circumstances that led to Nicole terminating the Cardinals' contact with the children. She explained that Robert has a daughter from his first marriage, Felicia, who lives in Idaho with her three children and her husband, Kyle. According to Andrea, Felicia has "a history of drug use in her past."

¶7    Andrea testified that shortly before Thanksgiving in 2020, she asked Nicole and Michael about getting together for Christmas with the Cardinals and Felicia's family. Nicole responded that she did not "feel comfortable with Felicia and Kyle being around the children" and did not "want her children around Felicia and Kyle without her being present." According to Andrea, Nicole did not express any concerns about her children being around Felicia's children, only about the children being around Felicia and Kyle.

¶8      Andrea further testified that she and Robert went to Idaho to visit Felicia's family for Thanksgiving in 2020 and then returned to Wisconsin with Felicia's children.    Thereafter, on approximately December 1, 2020, Nicole contacted Andrea and asked whether the Cardinals would like to have all six of Nicole and Michael's children stay overnight at the Cardinals' residence on Friday, December 4.    Andrea agreed, but after Robert picked the children up on December 4, Nicole contacted Andrea and was "very angry about not knowing that [Felicia's children] were at [the Cardinals'] house."  Robert testified that Nicole was upset about her children spending time with one of Felicia's children, specifically. Nevertheless, the children stayed the night with the Cardinals on December 4, and Nicole and Michael picked them up at 2:30 p.m. on December 5.  After that day, however, Nicole refused to allow the Cardinals to have contact with the children.

¶9      Andrea testified that the only other boundary regarding the children that Nicole had ever accused the Cardinals of crossing was allowing the children to watch YouTube on two occasions.  Andrea testified that in both instances, she immediately informed Nicole that one of the children had watched a video on YouTube with the Cardinals' supervision.

¶10      Jonathan testified that during his marriage to Nicole, their children saw the Cardinals frequently, and he believed that contact was good for the children. He testified that if Nicole had not cut off the Cardinals' contact with the children, he would not have done so.  Jonathan explained, however, that he and Nicole had a good co-parenting relationship, which he did not want to jeopardize.  When asked whether he believed there was any reason that contact with the Cardinals would not be in the children's best interest, Jonathan responded that he was concerned the "emotional harm" between Nicole and Andrea would "spill over" and affect the children.

¶11 Nicole testified that she had concerns about "the way Andrea speaks about other people" and was worried about Andrea saying things to the children about Nicole, Jonathan, and Michael. She explained that she and Michael "g[ot] together" before she was divorced from Jonathan, which caused problems in her relationship with Andrea, who did not approve of Michael and would "speak badly about him."

¶12 Nicole also testified that Andrea had a history of "disparag[ing] women … who have children" and wanting to separate the children from their mothers. In addition, Nicole testified that based on her previous conversations with Andrea, she was concerned that if she tried to move her family out of the state, Andrea would attempt to prevent her from doing so. Nicole also described how Andrea would routinely disparage Nicole's biological father, which made it "difficult for [Nicole] to cultivate a relationship with him."

¶13 Nicole explained that she did not believe it was in her children's best interest to have contact with the Cardinals because Andrea "doesn't respect boundaries" and "disparages people in front of whomever she wants." Nicole believed that, "if left unchecked," Andrea "would have continued to cross boundaries" and "not be respectful."

¶14 As for the incident on December 4, 2020, Nicole testified that she was not aware until Robert arrived to pick up the children that one of Felicia's children, in particular, was present at the Cardinals' home. According to Nicole, it would have been "customary" for Andrea to tell her if that child was present. Nicole testified that she did not stop Robert from taking the children that day because she "froze."

¶15    Nicole further testified that the December 4, 2020 incident was not the only reason that she terminated the Cardinals' contact with the children, but instead it "broke the camel's back" following "an acquired lifetime of reasons." In particular, Nicole emphasized Andrea's history of failing to respect boundaries. As an example, she explained that after she initially cut off contact with the Cardinals on December 5, 2020, she "asked for a month to take time to think about this and make a decision," but the Cardinals continued sending her messages and contacting Jonathan.

¶16    Nicole also testified that although she had consented to the Cardinals' previous relationship with the children, she routinely felt that the Cardinals pressured her for more time with the children. She explained that the Cardinals "insisted quite often that they visit every day," and they "required or requested strongly that [Nicole's family] spend every major holiday with them." According to Nicole, when she did not spend holidays with the Cardinals or invite them to parties or school functions, "it was always met with guilt." Nicole testified that the Cardinals' involvement with her children was "more than [she] would have liked," but she did not restrict their contact sooner because she had been "conditioned" not to say "no" to Andrea's requests. She also testified that, in the past, "anytime they had grandparents' rights cases in the news, [the Cardinals] always said that they would never let anyone take their grandbabies away from them."

¶17    Nicole denied that she had terminated the Cardinals' contact with the children because she was "angry" with the Cardinals. She explained:

> Anger is temporary. You can feel anger at the onset of something, but to continue to use it as a justification is unethical and traumatizing to people. My decision comes from many, many hours of contemplation over the entirety of the relationship I had with Andrea, the relationship I had

> with Robert, and the relationship, I believe, would extend to Andrea and Robert and my children going forward if it did.

¶18    Following the evidentiary hearing, the children's guardian ad litem (GAL) provided a recommendation to the court.  The GAL concluded that Nicole's decision to deny the Cardinals visitation with the children was not in the children's best interest.  The GAL recommended that the court grant the Cardinals a minimum of one weekend and one weeknight with the children each month.

¶19    While acknowledging that this was a very difficult case, the circuit court denied the Cardinals' petition for grandparent visitation.  In an oral ruling, the court identified *Michels v. Lyons*, 2019 WI 57, 387 Wis. 2d 1, 927 N.W.2d 486, as setting forth the legal standard that governed the petition.  Specifically, the court stated that under *Michels*, "a circuit court should consider the nature and extent of grandparent visitation only if a grandparent overcomes the presumption in favor of a fit parent's visitation decision with clear, satisfactory, and convincing evidence that the decision is not in the child's best interest."  The court further stated that under *Michels*, "[a] circuit court should not substitute its judgment for the judgment of a fit parent even if it disagrees with the parent's decision."

¶20    Applying the legal standard from *Michels* to the facts presented at the evidentiary hearing, the circuit court began by acknowledging the Cardinals' testimony regarding "their relationship with their three grandkids, the activities that they shared, the time that they spent, [and] the reliance by [Nicole and Jonathan] and eventually [Nicole and Michael] on the Cardinals to provide respite, to provide support, to provide a break from parenting."  However, the court also acknowledged Nicole's testimony chronicling

> a buildup of concern she had relative to primarily her mother's involvement in her life, but also in the life of her children.  What [Nicole] indicated were violations of

boundaries, what she indicated was controlling behavior, which she indicated was behavior that, in her mind, was not healthy relative to the grandkids.

¶21     The circuit court found that Nicole "was able … to articulate reasons for her decision to cut off visitation."   In particular, the court cited Nicole's testimony that following the December 4, 2020 incident, she "just wanted some space, wanted some opportunity to consider and think through, and in her mind, again, there was a lack of appreciation associated with her desire to just be left alone and to think through."

¶22     The circuit court also observed that Jonathan had been "put in a very difficult position" and was "somewhat caught in the middle in terms of having no specific concerns relative to the Cardinals' ability to have a relationship with the three children, but joining in his former wife's decision to not permit contact." Nevertheless, the court cited Jonathan's testimony expressing concern that "the rift that's developed between [Nicole and Andrea] will spill over to the kids," potentially causing them emotional harm.

¶23     Ultimately, the circuit court found that both Nicole and Jonathan "are fit parents.  They are good parents.  There was never any challenge to their parenting or to their ability to support and raise their children."  The court further found that Nicole "has made a decision that is grounded in articulable reasons relative to her concerns for the well-being of her children, separate and apart from her own estrangement from her mother," and that Jonathan "likewise has made a decision[,] and he is a grown man with his own mind, his own decision-making functions[,] to not likewise permit contact between the Cardinals and the children."  The court then determined that the Cardinals had "failed to meet their burden of proof by clear,

8

satisfactory, and convincing evidence" to overcome the presumption that Nicole and Jonathan's decision to deny visitation was in the children's best interest.

¶24 The circuit court subsequently entered a written order memorializing its oral ruling. In the order, the court reiterated that "[i]t is improper for a [j]udge to substitute his [or her] judgment for that of the parent unless there is clear and convincing evidence overcoming the presumption that the fit parent is acting in the child's best interests." The court also reiterated, for the same reasons explained in its oral ruling, that the Cardinals had failed to overcome that presumption.

¶25 The Cardinals filed a motion for reconsideration of the circuit court's decision denying their petition for grandparent visitation. The court denied the reconsideration motion, and the Cardinals now appeal.[3]

## DISCUSSION

¶26 "Whether to grant or deny grandparent visitation is within the circuit court's discretion." ***Rogers v. Rogers***, 2007 WI App 50, ¶7, 300 Wis. 2d 532, 731 N.W.2d 347. "We will affirm if the circuit court examined the relevant facts, applied the proper legal standard and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." ***Id.*** We do not substitute our judgment for that of a circuit court that meets this standard. *See **State v. Rhodes***,

---

[3] We pause to note that the parties' briefs do not comply with WIS. STAT. RULE 809.19(8)(bm) (2023-24), which requires a brief to "have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover." Our supreme court has explained that this pagination requirement "will match the page number to the page header applied by the eFiling system, avoiding the confusion of having two different page numbers." S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021). We admonish the parties' attorneys that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

2011 WI 73, ¶26, 336 Wis. 2d 64, 799 N.W.2d 850.  When reviewing a discretionary decision, we will not disturb the circuit court's factual findings unless they are clearly erroneous.  *Covelli v. Covelli*, 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260.  Whether the court applied an incorrect legal standard, however, is a question of law that we review de novo.  *Rogers*, 300 Wis. 2d 532, ¶7.

¶27    Subject to certain exceptions that are not applicable here, WIS. STAT. § 767.43(1) provides that a circuit court "may grant reasonable visitation rights" to a grandparent "if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child."  When considering a petition for grandparent visitation under this statute, a circuit court must apply a presumption "that a fit parent's visitation decision is in the best interest of his or her child." *Michels*, 387 Wis. 2d 1, ¶23.

> [A] circuit court should consider the nature and extent of grandparent visitation only if a grandparent overcomes the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest.  A circuit court should not substitute its judgment for the judgment of a fit parent even if it disagrees with the parent's decision.

*Id.*, ¶37.

¶28    On appeal, the Cardinals first argue that the circuit court applied an incorrect legal standard to their petition for grandparent visitation.  Specifically, the Cardinals argue that the court incorrectly "ruled that a parent must be unfit before his/her decisions [regarding grandparent visitation] can be overruled" by a court.  In support of this proposition, the Cardinals cite the court's statement in its written order that "so long as a parent adequately cares for his or her children, i.e., is fit, there will normally be no reason for the state to inject itself into the private realm of

the family to further question the ability of that parent." (Emphasis omitted.) Based on this statement, the Cardinals assert that the court incorrectly believed "that the only time grandparent visitation could be granted is if the parents are unfit."

¶29 The Cardinals are correct that the grandparent visitation statute does not "require[] a showing of parental unfitness before a court may override a parent's decision regarding grandparent visitation." *Roger D.H. v. Virginia O.*, 2002 WI App 35, ¶12, 250 Wis. 2d 747, 641 N.W.2d 440, *holding modified by Michels*, 387 Wis. 2d 1, ¶37. In this case, however, the circuit court did not require any such showing. Instead, the court correctly recognized that under *Michels*, it was the Cardinals' burden to overcome the presumption in favor of Nicole and Jonathan's visitation decision with clear and convincing evidence that their decision was not in the children's best interest. *See Michels*, 387 Wis. 2d 1, ¶37.

¶30 Moreover, we note that the statement from the circuit court's decision that the Cardinals cite in support of their claim that the court applied an incorrect legal standard was taken almost verbatim from *Michels*, which was itself quoting the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57 (2000). *See Michels*, 387 Wis. 2d 1, ¶16 (quoting *Troxel*, 530 U.S. at 68-69). We reject the Cardinals' apparent assertion that the circuit court applied an incorrect legal standard by referencing a quotation from controlling Wisconsin and United States Supreme Court precedent.

¶31 In further support of their claim that the circuit court applied an incorrect legal standard, the Cardinals note that during the evidentiary hearing, after they finished presenting their case-in-chief, Nicole moved for "summary judgment," arguing that the Cardinals had failed to rebut the presumption that Nicole and Jonathan's visitation decision was in the children's best interest. After

hearing arguments from the Cardinals and the GAL, the court orally denied Nicole's motion, stating, "[The c]ourt at this time is going to find that the initial presumption has been at least challenged sufficiently under [the] law to get us to the next phase."

¶32    The Cardinals interpret this statement to mean that the circuit court determined they had overcome the presumption discussed in *Michels* during their case-in-chief.    Accordingly, the Cardinals argue that the court subsequently "misapplie[d] [*Michels*]" in its ultimate decision … when it should [have] just made a finding of the [children's] best interest after the ruling at trial."

¶33    During its oral ruling denying the Cardinals' petition, however, the circuit court explained that it wanted to "clear up" what it believed was a "procedural gaffe."    The court then stated that Nicole's motion for "summary judgment" following the Cardinals' case-in-chief was "not timely" because "summary judgment … is generally a pre-trial, pre-hearing disposition."    The court explained that it had denied that motion "based more on an analysis of a motion to dismiss … but also based on the theories oftentimes advanced in civil cases" pertaining to "a judgment at the close of a party's case prior to the matter going into a defense."  The court continued:

> I wanted to clear that up because I think there was some arguable misunderstanding relative to the [c]ourt making some type of preliminary finding as to whether the burden of proof on the presumption, which is required by *Troxel*, [*Michels*], and the litany of cases that were referenced in everyone's pleadings had been met to that clear, satisfactory, and convincing standard.  In essence, the [c]ourt wanted all of the evidence in before it would make its decision.

¶34    Thus, it is clear from the circuit court's oral ruling that when the court denied Nicole's "summary judgment" motion, it did not make a determination that the Cardinals had met their burden to overcome the presumption discussed in

*Michels*. Rather, the court denied the motion because it wanted to consider all of the evidence before making a determination as to whether the Cardinals had overcome the presumption. The Cardinals' argument that the court did not apply the correct legal standard in its ultimate decision therefore fails.

¶35 The Cardinals next argue that the circuit court erroneously exercised its discretion by concluding that they failed to overcome the presumption discussed in *Michels*. In so doing, the Cardinals analogize this case to *Martin L. v. Julie R.L.*, 2007 WI App 37, 299 Wis. 2d 768, 731 N.W.2d 288, *holding modified by Michels*, 387 Wis. 2d 1, ¶38. In *Martin L.*, the children's mother, Julie, refused to allow the children's paternal grandparents to have unsupervised visitation with her children following the death of the children's father. *Id.*, ¶¶2-3. The circuit court granted the grandparents' petition for unsupervised visitation with two of the children. *Id.*, ¶1 & n.1. We affirmed, concluding the circuit court had not erroneously exercised its discretion. In particular, we noted that while the circuit court "recognized that Julie was not completely unjustified in her distrust of" the children's paternal grandparents, "the court emphasized that Julie's extreme anger inappropriately dominated her decision to deny unsupervised visitation." *Id.*, ¶15.

¶36 *Martin L.* is materially distinguishable. While the circuit court in *Martin L.* made an express finding that Julie's decision to deny unsupervised visitation was "inappropriately" motivated by her "extreme anger," *id.*, the circuit court in this case made no similar finding regarding Nicole. To the contrary, the court found that Nicole's visitation decision was "separate and apart from her own estrangement from her mother." The Cardinals appear to believe that the testimony introduced at the evidentiary hearing compelled a finding that Nicole acted "out of anger or to spite the Cardinals." As noted above, however, Nicole specifically testified that her decision to terminate the Cardinals' contact with the children was

not motivated by anger. The circuit court could properly rely on Nicole's testimony in that regard, and its finding that Nicole's visitation decision was "separate" from her estrangement from Andrea is not clearly erroneous. *See **Plesko v. Figgie Int'l***, 190 Wis. 2d 764, 775, 528 N.W.2d 446 (Ct. App. 1994) ("When the [circuit] court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to their testimony.").

¶37 The Cardinals also argue that Nicole provided insufficient reasons for her decision to terminate the Cardinals' contact with the children. Nicole testified, however, that her decision was based on a long history of the Cardinals—and, specifically, Andrea—refusing to respect boundaries. Examples of this behavior included Andrea making disparaging remarks about other people, allowing the children to watch YouTube, making Nicole feel guilty about not spending holidays with the Cardinals or inviting them to events, failing to tell Nicole that Felicia's children would be present at the Cardinals' house on December 4, 2020, and continuing to contact Nicole after the December 4 incident. Based on Nicole's testimony, the circuit court found that Nicole "made a decision [to terminate the Cardinals' contact with the children] that is grounded in articulable reasons relative to her concerns for the well-being of her children." That finding was based on the court's assessment of the evidence presented at the evidentiary hearing, and on appeal, "[w]e do not reweigh the evidence or reassess the witnesses' credibility." *See **Dickman v. Vollmer***, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202.

¶38 The Cardinals further claim that Jonathan's testimony at the evidentiary hearing supports their position because Jonathan "would not have independently cut off contact with the Cardinals." While Jonathan did testify that he would not have cut off the Cardinals' contact with the children absent Nicole's

decision to do so, he also explained that he had joined Nicole in opposing the Cardinals' petition for grandparent visitation due to his good co-parenting relationship with Nicole and his desire to avoid jeopardizing that relationship. In addition, Jonathan expressed concern that the "emotional harm" between Nicole and Andrea would "spill over" and affect the children, which would not be in the children's best interest. The circuit court found that Jonathan made his own decision not to allow the Cardinals to have contact with the children, and based on Jonathan's testimony at the evidentiary hearing, that finding is not clearly erroneous.

¶39 Finally, the Cardinals argue that based on the GAL's recommendation, the circuit court "should have found that visitation with the Cardinals was in the grandchildren's best interest." A court, however, is not bound by a GAL's recommendation. *See F.R. v. T.B.*, 225 Wis. 2d 628, 642, 593 N.W.2d 840 (Ct. App. 1999). While the GAL presented an analysis of the best interest factors set forth in WIS. STAT. § 767.41(5), the court was not required to agree with the GAL's analysis of each individual factor or with the GAL's overall weighing of the various factors. The court could instead reasonably determine, for the reasons articulated in its oral ruling and written decision, that the Cardinals had failed to overcome the presumption in favor of Nicole and Jonathan's decision to terminate the Cardinals' contact with the children. *See Michels*, 387 Wis. 2d 1, ¶17. Nothing in the Cardinals' appellate briefs convinces us that the court erroneously exercised its discretion in that regard.

> *By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

15